[No. A091784. First Dist., Div. Three. Dec. 26, 2001.]

JOSHUA JACKSON, a Minor, etc., Plaintiff and Appellant, v.
PACIFIC GAS & ELECTRIC COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the opinion is certified for publication with the exception of parts I.C. and III. of the Discussion.

1112

COUNSEL

McKinley & Smith, Timothy M. Smith; and Evan Eickmeyer for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Steven P. Burke and Kirk C. Jenkins for Defendant and Respondent.

## OPINION

**PARRILLI, J.**—In this appeal, we consider whether Civil Code section 846[1] immunity precludes suit by a child who suffered injuries when he attempted to retrieve his kite from an overhead power line. We determine the utility is immune from suit under these circumstances and none of the statutory exception applies. Further, we conclude Public Utilities Code section 2106 does not abrogate the immunity afforded a utility by section 846. We therefore affirm the entry of summary judgment.

### BACKGROUND

On April 4, 1998, 10-year-old Joshua Jackson was playing video games at the home of his friend, Dominic Portera. Dominic's mother, Laura Portera, suggested the boys go outside and fly Joshua's new kite, and they did so. But while Joshua stood in the Portera's backyard flying his kite, the wind blew the kite out of his hands and carried it over the adjoining property of Eve Prince (Laura Portera's mother). There, the kite became entangled in a power line owned by respondent Pacific Gas & Electric Company (PG&E). Joshua, Dominic and Dominic's younger sister Natalie ran onto the Prince property. Ms. Prince was not home at the time. After an unsuccessful attempt to reach the kite with a branch, Joshua tried to dislodge it using an aluminum pole the children found nearby. The pole touched the electrical line, causing Joshua serious physical injury.

Through his guardian ad litem, Joshua sued PG&E for negligence and negligence per se. The trial court granted PG&E's motion for summary judgment on the ground that section 846 barred the action. The court further denied Joshua's motion for reconsideration and entered judgment in favor of PG&E. This appeal followed.

### DISCUSSION

■ "Summary judgment is proper only if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A court must 'strictly construe the moving party's papers and liberally construe those of the opposing party to determine if they raise a triable issue of material fact.' [Citation.]" (*Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 112 [96 Cal.Rptr.2d 394].) On appeal, "we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]" (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

[1] All statutory references are to the Civil Code unless otherwise specified.

## I. *Section 846 Immunity Applies*

The recreational use immunity statute, codified in section 846, creates an exception to the general rule of *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] that a private landowner owes a duty of reasonable care to any person coming onto the land. (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1099 [17 Cal.Rptr.2d 594, 847 P.2d 560].) Portions of section 846 relevant to this appeal provide:

"An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section.

"A 'recreational purpose,' as used in this section, includes such activities as fishing, hunting, camping, water sports, hiking, spelunking, sport parachuting, riding, including animal riding, snowmobiling, and all other types of vehicular riding, rock collecting, sightseeing, picnicking, nature study, nature contacting, recreational gardening, gleaning, hang gliding, winter sports, and viewing or enjoying historical, archaeological, scenic, natural, or scientific sites. [¶] . . . [¶]

"This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration . . . ; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner."

### A. *Retrieving Kite Is a "Recreational Use" of Property*

Joshua argues PG&E does not enjoy immunity under section 846 because he did not enter its property for a "recreational purpose." He flew his kite on the Portera property and only entered the Prince property (and PG&E's easement) to *retrieve* the kite after it blew out of his hands. Since retrieving a lost item is not generally considered "recreation," Joshua contends the recreational use immunity statute does not apply, or the recreational nature of his activity was a factual issue precluding summary judgment.

Section 846 describes a wide range of recreational activities giving rise to immunity. Indeed, the Legislature has amended section 846 several times

since its enactment in 1963 to broaden the range of activities included within the statute's definition of a "recreational purpose." (*Ornelas v. Randolph, supra,* 4 Cal.4th at pp. 1100-1101, fn. 5.) Kite flying is indisputably a recreational activity, and, consistent with section 846's broad language, we conclude the steps a kite flyer takes to retrieve his wayward kite are included in the statutory definition of recreation. A kite flyer trusts his instrument to the whims and fancies of the wind—that is the joy of the sport. But in doing so, he takes a risk that the wind will blow the kite in an unintended direction or to an undesired location. Given the nature of the activity, we do not agree with Joshua that recreation stops the moment a kite leaves the flyer's control.

Still, Joshua insists summary judgment was improper because the existence of "recreational purpose" under section 846 is a question of fact. ▮ "Generally, whether one has entered property for a recreational purpose within the meaning of the statute is a question of fact, to be determined through a consideration of the 'totality of the facts and circumstances, including . . . the prior use of the land. While the plaintiff's subjective intent will not be controlling, it is relevant to show purpose.' (*Gerkin v. Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1027 [157 Cal.Rptr. 612].)" (*Ornelas v. Randolph, supra,* 4 Cal.4th at p. 1102.) ▮ However, the relevant facts here are not in dispute. Joshua went outside to fly a kite, at one point the kite blew out of Joshua's hands and became entangled in lines above the neighbor's property, and Joshua and his friends tried to retrieve it. An issue may exist as to whether Joshua intended to continue flying the kite after he recovered it, but this question is immaterial. (See *Ornelas v. Randolph, supra,* at p. 1102.) As in *Ornelas,* Joshua's presence on the PG&E easement was "occasioned by" his recreational activity (see *ibid.*);[2] therefore, the recreational use immunity statute applies.

## B. *Express Invitation Exception Inapplicable to Plaintiff's Claims*

In general, section 846 provides owners of any interest in land, possessory or nonpossessory, with immunity from tort liability for injuries sustained in the recreational use of that land. (*Hubbard v. Brown* (1990) 50 Cal.3d 189, 193-195 [266 Cal.Rptr. 491, 785 P.2d 1183].) However, the statute does not limit liability "to any persons who are expressly invited rather than merely

---

[2]The plaintiff in *Ornelas* went with other children to an area where farm equipment was stored. (*Ornelas v. Randolph, supra,* 4 Cal.4th at p. 1098.) The plaintiff did not play on the equipment, but sat nearby playing a handheld game while the others climbed on the equipment. He was injured, however, when a pipe dislodged and fell on him. (*Ibid.*) The Supreme Court concluded summary judgment was appropriately granted under section 846 despite the plaintiff's objection that he did not enter the property to play on the equipment but merely accompanied his friends. (*Ornelas,* at p. 1102.)

permitted" to enter a property. (§ 846.) This "express invitation" exception requires a direct, personal request from the landowner to the invitee to enter the property (*Johnson v. Unocal Corp.* (1993) 21 Cal.App.4th 310, 317 [26 Cal.Rptr.2d 148]; *Ravell v. U.S.* (9th Cir. 1994) 22 F.3d 960, 963), although the invitation need not be for the specific purpose of engaging in recreation. (*Calhoon v. Lewis, supra,* 81 Cal.App.4th at pp. 114-115.)

Joshua contends summary judgment under section 846 was improper because Laura Portera expressly invited him to play on the adjoining Prince and Portera properties. He offered evidence below showing Ms. Portera had the authority to invite children onto the Prince property in her mother's absence. PG&E disagreed that this evidence established an "express invitation" under section 846, as opposed to mere permission. In any event, PG&E argued, an invitation from Ms. Portera was irrelevant because *only* an invitation from PG&E could abrogate the utility's immunity under section 846. The trial court relied largely on PG&E's second argument in granting summary judgment, stating: "Even if the plaintiff had demonstrated an express invitation from the owner of the underlying property, no such third party invitation will abrogate PG&E's immunity pursuant to Civil Code § 846."

While her son and Joshua were inside playing, Laura Portera told them, "look, it's nice outside. Why don't you go outside and play?" The boys then decided to go out and fly Joshua's new kite. Ms. Portera testified that the boys routinely played on her property and her mother's adjoining property and never needed to ask permission from her or Ms. Prince. Ms. Portera also submitted a declaration in opposition to PG&E's motion for summary judgment, explaining that she was responsible for supervising the Prince property in her mother's absence and she had Ms. Prince's authority to invite children to play on this land. Regarding the date of the accident, Ms. Portera further declared Joshua and Dominic "had my express permission to play on my mother's property." In declarations submitted with Joshua's motion for reconsideration, Ms. Portera stated she intended her invitation to Joshua to encompass both the Portera and Prince properties, and Joshua stated he understood Ms. Portera's invitation to mean he could also play in the Prince's field if he wanted.

This evidence, plus all inferences that may be derived from it (see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856 [26 Cal.4th 80a, 107 Cal.Rptr.2d 841, 24 P.3d 493]), creates a factual issue as to whether Joshua received an express invitation to enter the Prince property. But the only relevant question is whether Ms. Portera's invitation was sufficient to abrogate the immunity PG&E enjoyed under section 846. Thus, we must consider whether the recreational use immunity statute protects a utility easement holder from suit where the underlying property owner has expressly

invited the plaintiff onto her property—or, stated differently, whether the "express invitation" exception applies to an easement holder.

■ "Section 846 was enacted to encourage property owners to allow the general public to engage in recreational activities free of charge on privately owned property. (*Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707-708 [190 Cal.Rptr. 494, 660 P.2d 1168], cert. den. 464 U.S. 915 [78 L.Ed.2d 257, 104 S.Ct. 277].) The statutory goal was to constrain the growing tendency of private landowners to bar public access to their land for recreational uses out of fear of incurring tort liability. [Citations.]" (*Hubbard v. Brown, supra,* 50 Cal.3d 189, 193.)

■ The statute grants immunity from suit by recreational users to "[a]n owner of *any* estate or *any other* interest in real property, whether possessory or nonpossessory." (§ 846, italics added.) As the Supreme Court has observed, this language is "exceptionally broad and singularly unambiguous," though this was not always so. (*Ornelas v. Randolph, supra,* 4 Cal.4th at p. 1102.) "As originally enacted the statute immunized only the owner 'of any estate in real property.' (Stats. 1963, ch. 1759, § 1, p. 3511.) It was subsequently amended, however, following a pair of appellate decisions holding that section 846 applied exclusively to holders of *possessory* interests in real property. [Citations.]" (*Ornelas, supra,* at pp. 1102-1103; see Stats. 1980, ch. 408, § 1, p. 797; *Darr v. Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895 [157 Cal.Rptr. 90]; *O'Shea v. Claude C. Wood Co.* (1979) 97 Cal.App.3d 903 [159 Cal.Rptr. 125].) Based on this legislative history, the Supreme Court concluded: "By amending section 846, the Legislature indisputably intended to remove the *Darr* and *O'Shea* limitations and to immunize the owner of *any* interest in real property regardless of whether the interest includes the right of exclusive possession." (*Hubbard v. Brown, supra,* 50 Cal.3d at p. 195.)

Thus, section 846 clearly provides PG&E, an easement holder, with immunity from tort suits by recreational users. However, Joshua claims PG&E lost this immunity pursuant to the statute's "express invitation" exception, which states: "[t]his section does not limit the liability which otherwise exists . . . to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner." (§ 846.) In the case of property subject to an easement, Joshua argues the term "landowner" must refer to the owner of the underlying fee, not the holder of an easement. He notes that when the Legislature amended section 846 to extend its protection to owners of nonpossessory interests in property, it did not replace the word "landowner" with similarly broad language. (See *Summers v. Newman* (1999) 20 Cal.4th 1021, 1029-1030 [86 Cal.Rptr.2d 303, 978

P.2d 1225] [legislative inaction may support inference of intent to preserve meaning ascribed by court].) In response, PG&E considers the term "landowner" to be mere shorthand for the owner of a possessory or nonpossessory interest in property who enjoys statutory immunity. Thus, the relevant "landowner" in this case is PG&E, and only an express invitation from PG&E could suffice to abrogate the utility's immunity. "Landowner" is not defined in section 846 or any other relevant provision of the Civil Code.

In the case of property held by one owner in fee but also subject to the easement interest of another, we conclude the "landowner" in section 846's invitee exception can only logically refer to the owner of the fee. ■ "An easement is an *interest in the land of another*, which entitles the owner of the easement to a *limited use or enjoyment* of the other's land. [Citations.]" (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 434, p. 614, italics in original.) An easement holder thus does not "own land," but simply has a right to use it for a defined purpose. Moreover, since an easement is a nonpossessory interest (*Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810, 830 [93 Cal.Rptr.2d 193]) of limited extent, an easement holder often will not have the power to invite guests onto the property. In contrast to the fee owner, an easement holder's ability to invite guests onto property is limited by: (1) in the case of an express easement, the definition of the easement holder's right of access set forth in the appropriate instrument (see § 806; 4 Witkin, Summary of Cal. Law, *supra*, Real Property, § 440, pp. 620-621); and (2) the principle that an easement holder " 'must use his easement and rights in such a way as to impose as slight a burden as possible' " on the underlying property. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 767 [60 Cal.Rptr.2d 770].) ■ Because an easement holder cannot "expressly invite[]" persons onto the premises, it makes no sense to interpret "landowner" in section 846 as referring to the holder of an easement.

However, it does not follow that an invitation from a fee owner will extinguish recreational use immunity as to *all* owners of estates in the property. We read the "express invitee" exception in section 846 as abrogating immunity *to the invitor only*. Thus, a fee owner's express invitation abrogates her immunity only, and not that held by other owners of interests in the property. This interpretation is consistent with the Legislature's clear intent to immunize *all* holders of interests in real property. (*Hubbard v. Brown, supra*, 50 Cal.3d at p. 197.) Joshua offers no reason, grounded in legislative history or policy, why a fee owner's invitation to personal guests should be considered sufficient to strip section 846's broad immunity from an easement holder. Nor would such a result square with the rationale for the invitee exception. Whereas section 846 was designed to encourage property

owners to permit recreation on their land, "[b]y carving out an exception for those persons who are personally invited, the Legislature showed it did not have a similar concern with encouraging property owners to provide access for the owner's personal guests. . . . Property owners do not need governmental encouragement to permit personal guests to come onto their land." (*Calhoon v. Lewis, supra*, 81 Cal.App.4th at p. 114.)

Thus, even if Ms. Portera's statement to Joshua constituted an express invitation to enter the Prince property (and PG&E's easement), this invitation did not abrogate PG&E's immunity from suit under section 846.[3]

C. *No Evidence of Willfulness or Maliciousness**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Public Utilities Code Section 2106 Does Not Abrogate Utility's Immunity*

Joshua argues that the Legislature did not intend section 846 to override duties to the public imposed upon utilities by statute or regulation. Citing the rule that, in the event of a conflict, a specific statute takes precedence over a general one, he contends any immunity PG&E might enjoy as a landowner under section 846 is trumped by the specific duties imposed upon it by the Public Utilities Code, specifically Public Utilities Code section 2106.[4] These statutes conflict, Joshua asserts, because Public Utilities Code section 2106 provides that utilities shall be liable for "all" loss or damage caused by their wrongful acts, whereas section 846 would eliminate that liability under certain circumstances. Thus, absent any authority, Joshua urges us to harmonize the purportedly conflicting statutes by concluding "[s]ection 846 only applies to 'common law' negligence, not to 'negligence per se' for violation of statutes and regulations." We decline to do so.

---

[3]Joshua complains that a failure to apply the invitee exception against PG&E in this case means that, by extension, even the fee owner herself will be barred from suing the utility if she is injured during recreation on her own property. Of course, we express no opinion on this hypothetical situation, which differs significantly from the facts before us. However, it is worth noting that section 846 states the owner of an interest in property "owes no duty of care to keep the premises safe for entry or use *by others* for any recreational purpose . . . ." (Italics added.) Whether a fee owner is such an "other" is a question for another day.

*See footnote, *ante*, page 1110.

[4]Public Utilities Code section 2106 states, in relevant part: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person."

First, although Joshua made the general argument below that PG&E's specific duties under the Public Utilities Code should prevail over the immunity afforded by section 846, he did not identify the specific statutory provision claimed to take precedence over section 846. From the record on appeal, it appears Joshua never presented the trial court with the argument that Public Utilities Code section 2106 overrides Civil Code section 846.

Second, even if Joshua did not impliedly waive his claim by failing to raise Public Utilities Code section 2106 below (see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 394, pp. 444-445), his argument fails on the merits. Joshua reads Public Utilities Code section 2106 far too broadly when he interprets its statement that a utility "shall be liable" to mean a utility must *always* be held liable—regardless of any contrary statute or rule—for damages resulting from its violation of a law or regulation. If this interpretation were correct, Public Utilities Code section 2106 would have accomplished the rather startling result of stripping utilities of all defenses other civil litigants enjoy (such as immunities, statutes of limitation, and so on). Not surprisingly, Joshua directs us to no support in case law or legislative history for the proposition that Public Utilities Code section 2106 imposes something like absolute liability on utilities. In fact, the statute has never been interpreted this way.

Public Utilities Code section 2106 was enacted to supplement the public remedies enumerated elsewhere in chapter 11 of the Public Utilities Act (Pub. Util. Code, § 2100 et seq.) "by authorizing the traditional private remedy of an action for damages brought by the injured party in superior or municipal court . . . ." (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 916 [55 Cal.Rptr.2d 724, 920 P.2d 669].) The statute simply allows claims to be brought against utilities, under certain circumstances, by private individuals. (See *ibid.* [observing that all other remedies in chapter 11 must be prosecuted by the Public Utilities Commission, the Attorney General or a district attorney]; *Vila v. Tahoe Southside Water Utility* (1965) 233 Cal.App.2d 469, 479 [43 Cal.Rptr. 654] ["[Public Utilitites Code] section 2106 is the only statutory authority for the recovery, by a person injured, of damages, compensatory and exemplary. The [Public Utilities] commission has no authority to award damages."].) Indeed, consistent with its place in the statutory scheme of the Public Utilities Act, the Supreme Court *limited* the applicability of Public Utilities Code section 2106 to only "those situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies." (*Waters v. Pacific Telephone Co.* (1974) 12 Cal.3d 1, 4 [114 Cal.Rptr. 753,

523 P.2d 1161].) In contrast to Joshua's argument here, the Supreme Court determined in *Waters* that an individual could not pursue her action for damages because it violated the Public Utility Commission's policy of allowing telephone utilities to limit their liability for ordinary negligence by means of a credit allowance. (*Id.* at pp. 10-11.)

■  Furthermore, we decline to limit the scope of immunity under section 846 to negligence only, as opposed to negligence per se, given the complete absence of statutory language, case law or legislative history to support this distinction. Such a limitation would also seem to contradict the Legislature's intent to provide landowners with broad immunity from suit by uninvited recreational users of their property. (See *Ornelas v. Randolph*, *supra*, 4 Cal.4th at pp. 1101-1102 [§ 846 covers broad range of recreational activities and protects broad range of land ownership interests].)

III.  *Motion for Reconsideration Properly Denied**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

DISPOSITION

Judgment affirmed. Appellant shall bear costs of the appeal.

McGuiness, P. J., and Jones, J.,† concurred.

A petition for a rehearing was denied January 24, 2002, and on January 7, 2002, and January 24, 2002, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 17, 2002. Chin, J., did not participate therein.

---

*See footnote, *ante*, page 1110.

†Presiding Justice of the Court of Appeal, First Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.