51 Cal.Rptr.3d 546 (2006)
145 Cal.App.4th 289
Eve PRINCE, Cross-Complainant and Appellant,
v.
PACIFIC GAS & ELECTRIC COMPANY, Cross-Defendant and Respondent.
No. H028957.
Court of Appeal of California, Sixth District.
November 29, 2006.
*547 Jon A. Heaberlin, Bernard P. Lahde, Rankin Landsness, Lahde, Serverian & Stock, San Jose, for Cross-Complainant and Appellant.
Frederick D. Baker, Steven P. Burke, Sedgwick, Detert, Moran & Arnold, San Francisco, for Cross-Defendant and Respondent.
*548 MIHARA, Acting P.J.
Joshua Jackson suffered serious injuries when he attempted to dislodge his kite from Cross-Defendant Pacific Gas & Electric Company's ("PG & E") power line on Cross-Complainant Eve Prince's property. Jackson brought suit against Prince for his injuries, who then filed a cross-complaint against PG & E for indemnification. The trial court granted PG & E's motion for summary judgment and dismissed the cross-complaint pursuant to the principle that "there can be no indemnity without liability." The court entered judgment for PG & E, and Prince appeals. We reverse the judgment.

I. Background

A. Factual Background
The underlying facts, which are set forth in Jackson v. Pacific Gas & Elec. Co. (2001) 94 Cal.App.4th 1110, 1113, 114 Cal. Rptr.2d 831 (Jackson I), are undisputed in this case. On April 4, 1998, Joshua Jackson, then ten years old, was playing video games at his friend's house. His friend's mother, Laura Portera, suggested the boys go outside to fly Jackson's new kite. As Jackson was flying his kite in the Porteras' backyard, the wind blew the kite out of his hands and carried it next door, to Prince's property (Prince is Laura Portera's mother). There, the kite became entangled in a power line owned by PG & E. Jackson and his friend ran onto the Prince property. Prince was not at home. After an unsuccessful attempt to reach the kite with a branch, Jackson tried to dislodge it using an aluminum pole the children found nearby. The pole touched the power line and Jackson was severely injured.

B. Jackson I

Jackson, through a guardian ad litem, first filed suit in San Francisco Superior Court against PG & E, who owns an easement across the Prince property to erect and maintain the power lines. PG & E moved for summary judgment, claiming immunity from suit pursuant to Civil Code section 846.[1] Section 846 provides, in relevant part: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purpose, except as provided in this section." The trial court granted PG & E's motion for summary judgment and the First Appellate District affirmed the judgment for PG & E, finding that PG & E is immune from liability for Jackson's injuries pursuant to section 846. (Jackson I, supra, 94 Cal.App.4th 1110,1113,1121,114 Cal.Rptr.2d 831.) The Court of Appeal determined specifically that: (1) based on the undisputed facts outlined above, Jackson's retrieval of the kite was a "recreational use" of property as a matter of law, and, therefore, "the recreational use immunity statute applies"; (2) there is no support for the "express invitation" or "willful and malicious failure" exceptions to the immunity statute;[2] and (3) section 2106 of *549 the Public Utilities Code, which provides that utilities shall be liable for "all" loss or damage caused by their wrongful acts, does not abrogate PG & E's immunity under section 846. (Id. at pp. 1114-1121, 114 Cal.Rptr.2d 831.) The Court of Appeal denied Jackson's subsequent petition for rehearing, and, on April 17, 2002, the California Supreme Court denied Jackson's petition for review. (Id. at p. 1121, 114 Cal.Rptr.2d 831.)

C. Jackson II

In August 2002, Jackson, through a guardian ad litem, filed a complaint against Prince in Santa Clara Superior Court and Prince thereafter filed a cross-complaint against PG & E. Prince's First Amended Cross-Complaint, filed May 7, 2003 (hereinafter "cross-complaint"), alleges that Jackson was injured as a result of PG & E's negligence thereby causing Prince to defend against a civil action and potentially to pay damages. The cross-complaint contains 11 causes of action: equitable indemnity, apportionment of fault, breach of duty to maintain easement, breach of contract, violation of Civil Code section 845, violation of Public Utilities Commission General Order 95, violation of Public Utilities Code section 2106, nuisance, declaratory relief, contribution, and tort of another.
PG & E demurred to the cross-complaint on several grounds, including that Prince cannot state a claim for equitable indemnity because PG & E is immune from liability for Jackson's injuries, as stated in Jackson v. Pacific Gas & Electric Co. (San Francisco Superior Court Case No. 302445) and affirmed in Jackson I, supra, 94 Cal.App.4th at page 1121, 114 Cal.Rptr.2d 831. PG & E requested that the trial court take judicial notice of the order, judgment, and appellate opinion in Jackson I. The trial court granted the request for judicial notice, but overruled the demurrer. The trial court's order, supplemented in response to a request by PG & E for clarification, states that "the immunity from liability recognized under Civ. C. § 846 to owners of any estate or other interest in real property does not bar cross-complainant's action because there are no facts on the face of the First Amended Cross-Complaint discussing the use of either cross-complainant's or cross-defendant's property for recreational purposes, which would implicate cross-defendant's immunity under Civ. C. § 846." PG & E filed a petition for writ of mandate in this Court, which was summarily denied. The California Supreme Court denied review.
PG & E subsequently moved for summary judgment, providing evidentiary support for the facts recited in Jackson I to show that Jackson was engaged in a recreational use of the property at the time of his injury. PG & E argued that the gravamen of Prince's cross-complaint is equitable indemnity and that an alleged wrongdoer cannot seek equitable indemnity from one who is not, and cannot be, liable to the alleged victim. Because section 846 renders PG & E immune from liability to Jackson as a matter of law, Prince is barred from seeking equitable indemnity from PG & E under the principle that "there can be no indemnity without liability." (See, e.g., Children's Hospital v. Sedgwick (1996) 45 Cal.App.4th 1780, 1787, 53 Cal.Rptr.2d 725 (Children's Hospital).) Prince argued in opposition, and continues to argue on appeal, that (1) PG & E failed to establish the elements of collateral estoppel *550 and Jackson I therefore cannot be invoked to bar the cross-complaint, and (2) claims for implied contractual indemnity are not subject to the principle that "there can be no indemnity without liability."
The trial court agreed with PG & E that the gravamen of Prince's cross-complaint is equitable indemnity and concluded "that there cannot be a right of equitable indemnity unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff. (Munoz v. Davis (1983) 141 Cal.App.3d 420, 425, 190 Cal.Rptr. 400.)" The court found that the undisputed material facts establish that PG & E is not jointly and severally liable for Jackson's injuries, as held in Jackson I, and, therefore, Prince has no right to claim indemnity from PG & E. The trial court granted PG & E's motion for summary judgment and at the same time denied Prince's motion for summary judgment in the main action, finding a triable issue of material fact regarding the express invitation exception to section 846. The court entered judgment for PG & E on the First Amended Cross-Complaint and Prince filed a timely notice of appeal with this Court.

II. Discussion

A. Standard of Review
"Appellate review of a ruling on a summary judgment or summary adjudication motion is de novo." (County of Santa Clara v. Atlantic Richfield Co. (2006) 137 Cal.App.4th 292, 316, 40 Cal. Rptr.3d 313.) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 843, 107 Cal.Rptr.2d 841, 24 P.3d 493.) The party moving for summary judgment bears the "burden of persuasion" that there are no triable issues of material fact and that the moving party is entitled to judgment as a matter of law. (Id. at p. 850, 107 Cal.Rptr.2d 841, 24 P.3d 493.)

B. Collateral Estoppel
Preliminarily, Prince claims that PG & E's argument amounts to an impermissible attempt to use Jackson I to collaterally estop Prince from relitigating PG & E's liability.
The doctrine of res judicata "collaterally estops parties or those in privity with them from litigating in a subsequent proceeding on a different cause of action any issue actually litigated and determined in the former proceeding." (Columbus Line, Inc. v. Gray Line Sight-Seeing Companies Associated Inc. (1981) 120 Cal. App.3d 622, 628,174 Cal.Rptr. 527 (Columbus Line).) In its briefing before the trial court, and on appeal, PG & E contends that it is not arguing that Prince's claims are barred by the doctrine of collateral estoppel. PG & E argues, instead, that the undisputed facts in this case establish both a recreational use and PG & E's immunity from liability to Jackson, as the court held in Jackson I. The trial court adopted this application of Jackson I when it determined that the undisputed facts establish that section 846 applies and then referenced Jackson I as support for its legal conclusion.
We concur with the trial court's use of Jackson I and agree that reliance on it as legal precedent does not implicate the doctrine of collateral estoppel. The summary judgment motion and its supporting documents establish the facts necessary to conclude that PG & E is immune from liability pursuant to the recreational use immunity statute. Prince was not precluded from *551 disputing PG & E's factual and legal assertions in her opposition to the motion. As Prince concedes, however, Jackson was engaged in a recreational use of the property when injured, and section 846 immunizes property owners against liability for injuries sustained in the course of recreational activity. Jackson I is relevant authority to the extent it applies the same statute invoked here to the exact same facts, and we find no reason to depart from the First Appellate District's reasoning and conclusion.
The case Prince cites to support her contention that PG & E's argument is essentially one for collateral estoppel Long Beach Grand Prix Assn. v. Hunt (1994) 25 Cal.App.4th 1195, 31 Cal.Rptr.2d 70is inapplicable. There, the plaintiff dismissed the proposed indemnitor from an earlier case with prejudice and the indemnitor attempted to use the resulting judgment to invoke the "no indemnity without liability" principle and preclude the indemnity claim in the cross-complaint. (Id. at p. 1197, 31 Cal.Rptr.2d 70.) The court held that dismissal of the cross-complaint was erroneous because due process forbids assertions of res judicata against a party unless that party was afforded a full and fair opportunity to litigate the issue. (Id. at p. 1203, 31 Cal.Rptr.2d 70.) PG & E is not using the judgment in Jackson I to bar the cross-complaint, but is relying on the legal precedent in Jackson I to support the argument that PG & E is not liable to Jackson, as a matter of law. Long Beach Grand Prix Assn v. Hunt does not address such an argument.
Additionally, application of the "no indemnity without liability" principle to Prince's indemnification claim does not itself violate due process rights. (See Children's Hospital, supra, 45 Cal.App.4th 1780, 1787-1788, 53 Cal.Rptr.2d 725.) The right to equitable indemnity has several well-recognized exceptions, and, as a court-made doctrine, is subject to qualification by the courts. (Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital (1994) 8 Cal.4th 100, 109, 32 Cal.Rptr.2d 263, 876 P.2d 1062 (Western Steamship).) We therefore concur with the trial court's conclusion, pursuant to the analysis and holding of Jackson I, that PG & E is immune from liability to Jackson, and with the trial court's use of this finding in evaluating PG & E's motion for summary judgment.

C. Prince's Implied Contractual Indemnity Claim
Indemnity is "defined as the obligation resting on one party to make good a loss or damage another party has incurred. This obligation may be expressly provided for by contract, it may be implied from a contract not specifically mentioning indemnity, or it may arise from the equities of particular circumstances." (Rossmoor Sanitation, Inc. v. Pylon, Inc. (1975) 13 Cal.3d 622, 628, 119 Cal.Rptr. 449, 532 P.2d 97.) "The concern of the doctrine [of equitable indemnification] is to avoid the obvious unfairness which results when two negligent persons cause a loss, and one is required to bear the entire burden of the loss while the other is allowed to go `scot free.'" (Woodward-Gizienski & Assocs. v. Geotechnical Exploration, Inc. (1989) 208 Cal.App.3d 64, 67, 255 Cal.Rptr. 800, internal citations omitted.) Pursuant to American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578, 591, 146 Cal. Rptr. 182, 578 P.2d 899 (American Motorcycle), current application of the equitable indemnity doctrine "permit[s] ... partial indemnity among concurrent tortfeasors on a comparative fault basis."
Prince bases her indemnification claim on an obligation implied from the written easement PG & E recorded for *552 construction and maintenance of the power lines on Prince's property.[3] Under California law, easement owners have implied legal obligations to maintain and repair the easement, and to prevent injury to third persons and the servient tenement. (6 Miller & Starr, Cal. Real Estate (3d ed.2005) § 15:67, pp. 15-223, 15-224, citing, among other authorities, Civ.Code, § 845, subd. (a), Dunn v. Pacific Gas & Elec. Co. (1954) 43 Cal.2d 265, 273-276, 272 P.2d 745 [public utility company with easement to erect and maintain power lines has duty to maintain lines in safe condition and prevent injury to third parties] and Colvin v. Southern Cal. Edison Co. (1987) 194 Cal.App.3d 1306, 1312, 240 Cal.Rptr. 142, overruled on other grounds ["[s]uch an easement necessarily carries with it not only the right but also the duty to maintain and repair the structure or facility for which it was created"].) Prince contends that by failing to maintain adequate clearance between its power lines and the ground, PG & E breached its contractual duty to Prince to reasonably maintain and repair the easement. PG & E's breach resulted in injury to Jackson and exposed Prince to damages. According to Prince's implied contractual indemnity theory, PG & E is therefore obligated to indemnify Prince for any costs incurred as a result of Jackson's suit against Prince.

D. Implied Contractual Indemnity and the Principle "There Can Be No Indemnity Without Liability"
The broad issue we consider is whether a defendant who is not liable to the plaintiff can be liable pursuant to a cross-complaint for implied contractual indemnity. The question presented is one of first impression; no reported California decision has considered whether the principle that "there can be no indemnity without liability" applies to claims for implied contractual indemnity. There are a number of cases, however, applying this principle in the context of non-contractual, or tort-based, equitable indemnification. This state of the caselaw engenders the parties' arguments in this case.
Prince argues that implied contractual indemnity and tort-based indemnity are distinct theories. Because implied contractual indemnity arises from a contractual duty between the parties, not a shared duty to the underlying plaintiff, liability to the plaintiff is not required. Thus, Prince contends, the "no indemnity without liability" principle does not apply to her claim for implied contractual indemnity, and PG & E's immunity vis-à-vis Jackson is irrelevant to her cross-complaint. PG & E, in turn, contends those cases applying the principle to bar claims for equitable indemnity are "directly on point." It argues that the California Supreme Court's decision in Bay Development, Ltd. v. Superior Court (1990) 50 Cal.3d 1012, 269 Cal.Rptr. 720, 791 P.2d 290 (Bay Development), which held that both implied contractual indemnity and tort-based indemnity are forms of "equitable indemnification," necessarily means that any limitations to equitable indemnity claims (including the principle of "no indemnity without liability") are equally applicable to both types of claims.

i. Equitable Indemnification: Implied Contractual Indemnity v. Tort-Based Indemnity
Traditionally, courts have recognized that claims for implied contractual indemnity *553 and tort-based indemnity arise from different sourcesa contractual duty between the proposed indemnitee and indemnitor for the former, and a tort duty to the underlying plaintiff for the latter. (Compare, e.g., Great Western Furniture Co., Inc., of Oakland v. PorterCorp (1965) 238 Cal.App.2d 502, 516-517, 48 Cal.Rptr. 76 [implied contractual indemnity] and Columbus Line, supra, 120 Cal.App.3d 622, 628, 174 Cal.Rptr. 527 [tort-based indemnity].) In Bear Creek Planning Com. v. Title Ins. & Trust Co. (1985) 164 Cal. App.3d 1227, 211 Cal.Rptr. 172 (Bear Creek), the court explained, "An action for implied contractual indemnity is not a claim for contribution from a joint tortfeasor; it is not founded upon a tort or upon any duty which the indemnitor owes to the injured third party. It is grounded upon the indemnitor's breach of duty owing to the indemnitee to properly perform its contractual duties." (Id. at pp. 1238-1239, 211 Cal.Rptr. 172, emphasis in original; see also Smoketree-Lake Murray, Ltd. v. Mills Concrete Construction Co. (1991) 234 Cal.App.3d 1724, 1736-1737, 286 Cal.Rptr. 435 ["Implied contractual indemnity is applied to contract parties and is designed to apportion loss among contract parties based on the concept that one who enters a contract agrees to perform the work carefully and to discharge foreseeable damages resulting from that breach."].) The Bear Creek court took this distinction one step further, however, and found that "[i]mplied contractual indemnity is not based upon equitable considerations[.]" (164 Cal. App.3d at p. 1239, 211 Cal.Rptr. 172.) Thus, the court concluded, the defendant in an action for implied contractual indemnity is not entitled to an apportionment of damages based on theories of equitable indemnity and the comparative fault principles of American Motorcycle. (Id. at p. 1240, 211 Cal.Rptr. 172.)
In Bay Development our Supreme Court disapproved of Bear Creek to the extent it held that a claim for implied contractual indemnity is not a form of equitable indemnity and is not subject to equitable apportionment principles. (Bay Development, supra, 50 Cal.3d 1012, 1031-1032 & fn. 12, 269 Cal.Rptr. 720, 791 P.2d 290.) The specific issue presented in Bay Development was whether a defendant's good faith settlement (see Code Civ. Proc., § 877.6, subd. (c)) bars a nonsettling defendant's claim for implied contractual indemnity. (Id. at p. 1029, 269 Cal.Rptr. 720, 791 P.2d 290.) In analyzing the issue, the court observed that "[although the implied contractual indemnity doctrine and the implied noncontractual equitable indemnity doctrine arose separately and were sometimes characterized as distinct categories of indemnity (see, e.g., Rossmoor Sanitation, Inc. v. Pylon, Inc. (1975) 13 Cal.3d 622, 628[, 119 Cal.Rptr. 449, 532 P.2d 97]), equitable considerations have always played an integral role in defining the scope of the implied contractual indemnity doctrine. [Citation.]" (Bay Development, supra, 50 Cal.3d at p. 1029, fn. 10, 269 Cal.Rptr. 720, 791 P.2d 290.) The court noted that in an earlier Supreme Court decision, E.L. White v. City of Huntington Beach (1978) 21 Cal.3d 497, 506-507, 146 Cal.Rptr. 614, 579 P.2d 505, the "court viewed a claim for implied contractual indemnity as a form of equitable indemnity, subject to the comparative indemnity principles established in American Motorcycle." (Bay Development, supra, 50 Cal.3d at pp. 1030-1031, 269 Cal. Rptr. 720, 791 P.2d 290.) The court thus concluded that "a claim based on an implied contractual indemnity theory is a form of equitable indemnity, and therefore such a claim is barred by a good faith settlement under [Code of Civil Procedure] section 877.6, subdivision (c)." (Id. at p. 1020, 269 Cal.Rptr. 720, 791 P.2d 290.)
*554 Although this holding settles any question that implied contractual indemnity is a form of equitable indemnity it does not necessarily eliminate the traditional understanding that the two types of implied equitable indemnity arise from different sources. Bay Development's application of the good faith settlement statute to implied contractual indemnity claims is not based on any determination that it, like tort-based indemnity, is premised on the joint tortfeasor status of the parties; instead, it is based on the broader concept of equitable considerations. The court explained, for instance, that "[although [proposed indemnitees] assert that a claim for implied contractual indemnity is not barred by a good faith settlement because the language of section 877.6, subdivision (c) does not explicitly refer to such a claim but instead refers to indemnity claims which are `based on comparative negligence or comparative fault,' in our recent decision in Far West Financial Corp. v. D & S Co. [ (1988) 46 Cal.3d 796, 251 Cal. Rptr. 202, 760 P.2d 399], we explained that our prior cases establish that the term `equitable apportionment or allocation of loss' may be more descriptive than `comparative fault,' and we held that the language used in section 877.6 encompasses all claims for equitable indemnity." (Bay Development, supra, 50 Cal.3d pp. 1031-1032, fn. 11, 269 Cal.Rptr. 720, 791 P.2d 290, citations and internal quotation marks omitted.)
The Bay Development court in fact recognized the contractual nature of the relationship between the parties and its continuing importance in a viable implied contractual indemnity claim when it instructed that this contractual relationship be considered in applying the good faith settlement rules: "In evaluating the settling defendant's potential proportionate liability for purposes of this determination of good faith, the trial court must take into account any contractual relationship between the settling and nonsettling defendants, and must consider how each party's performance of its contractual obligations relates to its share of liability.... The trial court's obligation to take into account such considerations in making its good faith determination serves to ensure that a nonsettling defendant will receive the benefit of the substantive loss allocation principles embodied in the implied contractual indemnity doctrine." (Id. at pp. 1034-1035, 269 Cal.Rptr. 720, 791 P.2d 290.) This recognition belies an approach that treats all forms of equitable indemnity identically and without reference to the differing sources giving rise to the duty to indemnify, as PG & E suggests we take in this case.
PG & E points to broad language in Bay Development stating that "the rules governing equitable indemnity" are applicable to claims for implied contractual indemnity. (See Bay Development, supra, 50 Cal.3d at p. 1033, 269 Cal.Rptr. 720, 791 P.2d 290.) Read in context, this statement does not support PG & E's position that Bay Development resolved the question before us. In determining whether the good faith settlement rules apply to implied contractual indemnity claims, the Bay Development court considered and rejected the proposed indemnitees' argument that a claim of implied contractual indemnity should be equated with a claim for express contractual indemnity, which is not precluded by a good faith settlement. (Id. at pp. 1032-1033, 269 Cal.Rptr. 720, 791 P.2d 290.) The court observed that even express indemnification provisions are subject to limitation by the courts based upon the culpability of the parties and the specific language in the indemnification agreement. (Id. at p. 1033, 269 Cal.Rptr. 720, 791 P.2d 290.) Because implied contractual indemnification claims *555 have no written clause as a reference point, equating implied indemnification with express in this context "could accord an indemnitee greater rights than it would have under an express indemnification contract." (Ibid.) "Thus," the court stated, "the legal rules applicable to the interpretation of express indemnification contracts provide further support for the conclusion that a claim for implied contractual indemnity is a form of equitable indemnity subject to the rules governing equitable indemnity claims." (Ibid., emphasis added.)
In other words, express contractual indemnity is subject to its own comparative fault rules that parallel those governing equitable apportionment for tort-based indemnity claims (i.e., the comparative fault principles of American Motorcycle and the good faith settlement rule). Because implied contractual indemnity lacks similar safeguards, the latter rules must be applied in the context of implied contractual indemnification. There is no indication that the court considered the principle of "no indemnity without liability"a distinct doctrine applied separately from section 877.6 and the comparative fault principles of American Motorcyclein its analysis. We therefore reject PG & E's argument that the court's statement evidences a determination that the "no indemnity without liability" principle applies to claims for implied contractual indemnity. (See Santisas v. Goodin (1998) 17 Cal.4th 599, 620, 71 Cal.Rptr.2d 830, 951 P.2d 399 ["An appellate decision is not authority for everything said in the court's opinion but only `for the points actually involved and actually decided.'"]; see also Fireman's Fund Ins. Co. v. Maryland Cas. Co. (1998) 65 Cal.App.4th 1279, 1301, 77 Cal.Rptr.2d 296 ["In every case, it is necessary to read the language of an opinion in light of its facts and the issues raised, in order to determine which statements of law were necessary to the decision, and therefore binding precedent, and which were general observations unnecessary to the decision."].)
As a final point, post-Bay Development decisions continue to recognize the historical distinction between tort-based indemnity and implied contractual indemnity. In West v. Superior Court (1994) 27 Cal. App.4th 1625,1633, 34 Cal.Rptr.2d 409, the Fourth Appellate District cited Bear Creek (with recognition of the court's limited disapproval of the case in Bay Development) to state that implied contractual indemnity is "grounded upon the indemnitor's breach of duty owing to the indemnitee [,]" not on tort or any duty the indemnitor owes to the injured party.[4] More recently, in BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc. (2004) 119 Cal.App.4th 848, 852, 14 Cal.Rptr.3d 721, the court distinguished tort-based indemnity from implied contractual indemnity as follows: "With limited exception, there must be some basis for tort liability against the proposed indemnitor. Generally it is based on a duty owed to the underlying plaintiff, although vicarious liability and strict liability also may sustain application of equitable indemnity. In addition, implied contractual indemnity between the indemnitor and indemnitee can provide a basis for equitable indemnity." (Internal citations omitted; see also Sehulster Tunnels/Pre-Con v. Traylor Brothers, *556 Inc./Obayashi Corp. (2003) 111 Cal. App.4th 1328, 1351, 4 Cal.Rptr.3d 655 [an implied contractual indemnity claim is not founded on "tort nor on any duty that the indemnitor owes to the injured party[,]" but "is predicated on the indemnitor's breach of duty owing to the indemnitee to properly perform its contractual responsibilities"].)
We conclude that continued recognition of the fundamental differences between implied contractual indemnity and tort-based equitable indemnity does not contradict Bay Development holding. We therefore find that the proposed indemnitor's duty to the underlying plaintiff is not a requirement of implied contractual indemnity and that this distinction must be considered in application of the "no indemnity without liability" principle to this case.

ii. Application Of The Principle "There Can Be No Indemnity Without Liability"
In considering the principle "there can be no indemnity without liability," we turn first to the two cases principally relied upon by PG & E and the trial court Children's Hospital, supra, 45 Cal.App.4th 1780, 53 Cal.Rptr.2d 725 and Munoz v. Davis (1983) 141 Cal.App.3d 420, 190 Cal. Rptr. 400 (Munoz), respectively. These cases are frequently cited in application of the principle to tort-based indemnification claims.
In Children's Hospital, a plaintiff brought a medical malpractice action against an anesthesiologist for injuries she sustained during surgery. (Children's Hospital, supra, 45 Cal.App.4th at pp. 1783-1784, 53 Cal.Rptr.2d 725.) The anesthesiologist prevailed on the merits when a jury determined her negligence was not the cause of plaintiffs injuries, and the plaintiff then brought a second action against the hospital she was transferred to after surgery. (Id. at p. 1784, 53 Cal.Rptr.2d 725.) A jury awarded substantial damages and the hospital ultimately settled for $2.5 million. (Ibid.) The hospital then sued the anesthesiologist for equitable indemnification. (Ibid.) The court concluded that the anesthesiologist's exoneration prevented the hospital from relitigating the issue and that the hospital had no claim for equitable indemnity. (Id. at p. 1787, 53 Cal.Rptr.2d 725.) In reaching its conclusion, the court stated that "an action for equitable indemnity is premised upon a joint legal obligation to another for damages" and stressed that the hospital's "equitable indemnity claim lacks the essential element of common liability to an injured person." (Children's Hospital, supra, 45 Cal.App.4th at p. 1787, 53 Cal.Rptr.2d 725, citing Western Steamship, supra, 8 Cal.4th 100, 114-115, 32 Cal.Rptr.2d 263, 876 P.2d 1062.)
In Munoz, a passenger in a car was injured and retained an attorney to represent him in a suit against the driver of the other car. (Munoz, supra, 141 Cal.App.3d at p. 422, 190 Cal.Rptr. 400.) The attorney failed to file a complaint within the statute of limitations. (Ibid.) The passenger sued the attorney for legal malpractice and the attorney cross-complained against the driver for equitable indemnification. (Ibid.) After reviewing the history of equitable indemnification, the court found that "one point stands clear: there can be no indemnity without liability. In other words, unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity." (Id. at pp. 423-425, 190 Cal. Rptr. 400.) The court determined that there was "no basis for equitable indemnity" between the driver and the passenger's attorney "because they are not jointly and severally liable for the same injury." (Id. at p. 427,190 Cal.Rptr. 400.)
*557 The analysis in both cases may be summarized as follows: The claim asserted (tort-based equitable indemnity) requires joint and several liability to the injured plaintiff, but because the proposed indemnitor is not liable to the injured plaintiff for the same injury as the proposed indemnitee, there is no basis for indemnification. This summation of the rationale weighs against application of the principle to claims for implied contractual indemnity, which, as we concluded above, are premised on contractual obligations between the indemnitor and indemnitee, and not on joint and several liability to the underlying plaintiff. We observe, however, that in both cases the finding of joint and several liability, or lack thereof, is premised on factors that may be equally relevant to an implied contractual indemnity claim. In Children's Hospital, the earlier litigation determined that the proposed indemnitor, the anesthesiologist, did not cause the plaintiffs injury. (Children's Hospital, supra, 45 Cal.App.4th at p. 1784, 53 Cal. Rptr.2d 725.) In Munoz, the court found the proposed indemnitor and indemnitee did not contribute to the same injury to the plaintiff passenger. (Munoz, supra, 141 Cal.App.3d at p. 427, 190 Cal.Rptr. 400.) The lack of liability in these cases stems from a lack of causation for the underlying injury to the plaintiff. (See also Allis-Chalmers Corporation v. Superior Court (1985) 168 Cal.App.3d 1155, 1158-1159, 214 Cal.Rptr. 615 [no claim for indemnity if defendant is not liable to plaintiff due to plaintiffs factual admissions in action against defendant].) A causal link between the indemnitor's actions and the plaintiffs injury is an element of either type of indemnity.[5] We therefore are reluctant to rely solely on this line of cases in determining whether the general principle expressed is inapplicable to claims for implied contractual indemnification. In other words, despite the use of the term of art, "joint and several liability," these cases turn on a fundamental factual problem with the indemnification claim that also is relevant to implied contractual indemnity and is only one aspect of what constitutes "joint and several liability."
For further guidance, we therefore consider two other cases the parties discuss only briefly, Western Steamship, supra, 8 Cal.4th 100, 32 Cal.Rptr.2d 263, 876 P.2d 1062 and Colich & Sons v. Pacific Bell (1988) 198 Cal.App.3d 1225, 244 Cal.Rptr. 714 (Colich & Sons). Both cases apply the "no indemnity without liability" principle in the context of a statutory limitation on liability, which is of greater relevance in this case.
The plaintiff in Western Steamship, a cruise ship employee, fell ill on board the ship. (Western Steamship, supra, 8 Cal.4th at p. 104, 32 Cal.Rptr.2d 263, 876 P.2d 1062.) She was given medical attention on the ship and then transferred to a land-based hospital, where she was improperly intubated and never regained consciousness. (Id. at pp. 104-105, 32 Cal. Rptr.2d 263, 876 P.2d 1062.) The guardian for the injured plaintiff brought a negligence action against the cruise ship owner, who settled with the plaintiff and then sued the treating hospital for indemnification. (Id. at p. 105, 32 Cal.Rptr.2d 263, 876 P.2d 1062.) The question before the *558 court was whether a section of the Medical Injury Compensation Reform Act (MCRA), which would limit the plaintiffs recovery against the hospital (as a health care provider), "applies in an action for partial equitable indemnification by a concurrent tortfeasor." (Id. at p. 104, 32 Cal. Rptr.2d 263, 876 P.2d 1062.) The court's conclusion was two-fold: "[S]uch limitation is necessary to effectuate the statutory scheme and ... is consistent with common law principles of implied indemnity requiring joint liability as a predicate to recovery." (Ibid., emphasis added.)
The court first discussed general principles of equitable indemnification, and stressed that "[i]n determining the availability of equitable indemnity, each case must be evaluated in its own unique context to determine whether and to what extent one concurrent tortfeasor is permitted to recover from another." (Id. at p. 107, 32 Cal.Rptr.2d 263, 876 P.2d 1062.) Additionally, the court observed, "the granting of indemnity in any situation represents a judicial choice of policy and courts have long recognized that the doctrine is not available where it would operate against public policy." (Id. at pp. 109-110, 32 Cal.Rptr.2d 263, 876 P.2d 1062, internal quotations and citations omitted.)
After analyzing the relevant statutory scheme and its underlying purpose, the court discussed "the fundamental principle that `there can be no indemnity without liability.'" (Western Steamship, supra, 8 Cal.4th at p. 114, 32 Cal.Rptr.2d 263, 876 P.2d 1062.) It summarized the principle as follows: "Indemnity does not invariably follow fault; it is premised on a joint legal obligation to another for damages. Accordingly, as against the indemnitee, the indemnitor can invoke any substantive defense to liability that would be available against the injured party.... [F]or certain procedural purposes, such as statutes of limitations, an indemnity claim is an independent action. [Citation.] As to matters of substantive law, however, it is wholly derivative and subject to whatever immunities or other limitations on liability would otherwise be available." (Id. at pp. 114 115, 32 Cal.Rptr.2d 263, 876 P.2d 1062, emphasis added.)
The court concluded that to the extent the statute limits the plaintiffs recovery against health care providers, "it concomitantly limits [the health care providers'] joint liability irrespective of proportionate fault." (Id. at p. 116, 32 Cal.Rptr.2d 263, 876 P.2d 1062.) "Thus, concurrent tortfeasors have no right to indemnification beyond this amount." (Ibid.) The court observed that its holding is consistent with the "restitutionary nature of indemnity" and does not contravene the equitable premise of partial indemnity set forth in American Motorcycle. (Id. at pp. 116-117, 32 Cal.Rptr.2d 263, 876 P.2d 1062.) Pursuant to American Motorcycle, concurrent tortfeasors must bear a disproportionate burden of damages if the concurrent tortfeasors are insolvent or immune from suit. (Id. at p. 117, 32 Cal.Rptr.2d 263, 876 P.2d 1062.) The court noted that in enacting the statute, the Legislature already had determined that as between a negligent health care provider and innocent plaintiff, the plaintiff should bear the loss of noneconomic damages over the statutory limit. (Ibid.) Thus, "[g]iven the public policy considerations previously discussed, [there is] no unfairness in shifting this burden instead to a negligent non-MICRA defendant in the case of concurrent tortfeasors." (Ibid.)
Colich & Sons, discussed at length in Western Steamship, presents a similar analysis. (See Western Steamship, supra, 8 Cal.4th at pp. 115-116, 32 Cal.Rptr.2d 263, 876 P.2d 1062.) There, an excavation contractor damaged an underground telephone *559 cable owned by Pac Bell, resulting in service interruption to an airline company. (Colich & Sons, supra, 198 Cal.App.3d 1225, 1230, 244 Cal.Rptr. 714.) The airline sued the contractor on negligence grounds for lost revenue and expenses. (Id. at pp. 1230-1231, 244 Cal.Rptr. 714.) The contractor cross-complained against Pac Bell for equitable indemnification, alleging that Pac Bell negligently caused the airline's damages. (Id. at p. 1231, 244 Cal.Rptr. 714.) Pac Bell demurred on the ground that the airline could not sue it directly due to a limitation of liability tariff filed with the Public Utilities Commission, which covered damages resulting from a service interruption. (Ibid.) Thus, Pac Bell argued, the contractor's derivative claim for indemnity likewise was barred. (Ibid.)
The court, citing the principle that "there can be no indemnity without liability," reasoned that because the tariff prevented Pac Bell from being held jointly and severally liable, allowing the cross-complaint for damages "would thwart the undisputed general PUC policy to limit the telephone utility's liability for ordinary negligence for service interruptions and hinder its rate-making functions." (Colich & Sons, supra, 198 Cal.App.3d at p. 1236, 244 Cal.Rptr. 714.) The court further found that the equities favored a parallel limitation on the cross-complaint. (Id. at p. 1237, 244 Cal.Rptr. 714.) It noted, for instance, that Pac Bell is "not granted immunity from all negligent acts[,]" that the contractor will have no liability if not negligent itself, and that the contractor is in a better position to insure itself against liability for the damages at issue. (Id. at pp. 1237-1238, 244 Cal.Rptr. 714.) The contractor thus was barred from claiming comparative equitable indemnity from Pac Bell based on a negligent service interruption. (Id. at pp. 1236-1239, 244 Cal.Rptr. 714.)
Examination of these cases reveals two points important to our analysis. First, unlike Children's Hospital and Munoz, the only alleged failing of the indemnification claims in Western Steamship and Colich & Sons is lack of actual liability to the plaintiff (due to a statute limiting such liability). In barring the equitable indemnification claims in this context, these cases confirm the primary rationale of the "no indemnity without liability" principle: Claims for tort-based equitable indemnity are derived from the parties' joint obligation to the plaintiff for the plaintiffs injuries and absent this joint obligation to the plaintiff, there is no basis for such a claim. We determined above that implied contractual indemnity claims are derived, instead, from the contractual obligations between indemnitee and indemnitor. In this regard, claims for implied contractual indemnity are not derivative of liability to the plaintiff, but are separate actions arising from contractual obligations. This leaves little support in the caselaw for application of the judicially-created principle of "no indemnity without liability" to claims for implied contractual indemnification.
Second, following the approach in Western Steamship and Colich & Sons, an equitable indemnification claim requires the court to weigh the equities of the particular situation, including whether a claim for equitable indemnification in the face of statutory restrictions on liability would thwart the legislative policies behind those limits. (See also Munoz, supra, 141 Cal. App.3d at pp. 427-431, 190 Cal.Rptr. 400 [holding, as a separate and independent ground, that equitable and policy considerations did not support the availability of equitable indemnity to shift the attorney's malpractice liability to the driver]; Children's Hospital, supra, 45 Cal.App.4th at p. 1787, 53 Cal.Rptr.2d 725 [concluding that equitable considerations supported *560 preclusion of the indemnity claim pursuant to the "no indemnity without liability" principle].) In light of Bay Development unequivocal holding that implied contractual indemnity is a form of equitable indemnification, we are compelled to consider the public policy and equitable concerns in determining whether PG & E's immunity impacts Prince's cross-complaint.
"Section 846 was enacted to encourage property owners to allow the general public to engage in recreational activities free of charge on privately owned property. The statutory goal was to constrain the growing tendency of private landowners to bar public access to their land for recreational uses out of fear of incurring tort liability." (Jackson I, supra, 94 Cal. App.4th 1110, 1117, 114 Cal.Rptr.2d 831, internal quotations and citations omitted.) As our high court explained, "[t]he public policy balance achieved by the statute is clear: landowners are broadly encouraged to allow access to their property; recreationists who take advantage of this access waive their right to sue for ordinary negligence." (Ornelas v. Randolph (1993) 4 Cal.4th 1095, 1106, 17 Cal.Rptr.2d 594, 847 P.2d 560.) The statute, in effect, "provides an exception from the general rule that a private landowner owes a duty of reasonable care to any person coming upon the land." (Id. at p. 1099, 17 Cal.Rptr.2d 594, 847 P.2d 560.)
PG & E contends that if we do not extend its section 846 immunity, then a landowner can contravene the intention of the statute and strip PG & E of its immunity merely by inviting a guest onto the property. We disagree with this characterization. PG & E, as held in Jackson I, retains its immunity from suit by an injured recreationist regardless of a possessory landowner's invitation to the injured party. (See Jackson I, supra, 94 Cal. App.4th at p. 1119, 114 Cal.Rptr.2d 831["[e]ven if Ms. Portera's statement to Joshua constituted an express invitation to enter the Prince property (and PG & E's easement), this invitation did not abrogate PG & E's immunity from suit under section 846"].) PG & E, however, has contractual duties to Prince that are separate and distinct from the general duty of care to Jackson that is the subject of section 846. Prince's claim for implied contractual indemnification does not rely on, or seek to enforce, the duty that is limited by section 846, but instead relies on duties arising from the easement. Thus, unlike in Western Steamship and Colich & Sons, the indemnity claim does not thwart the legislative policy behind section 846 to limit liability.
We further observe that a more accurate characterization of the concerns raised in this case is that adopting PG & E's approach would strip Prince of her rights pursuant to the easement simply because the party injured on her property was engaged in a recreational activity. We fail to see how this would better serve the goal of encouraging property owners to open their properties for recreational use activities by the general public. Extending section 846 immunity to bar an implied contractual indemnity claim between landowners would force one landowner to bear the risk of another's negligence when inviting guests onto the property. Such a result is not contemplated by the statute and is contrary to general equitable concerns. Prince relied on PG & E to maintain the power lines, and PG & E is in a superior position to avoid, or insure against, the type of injury to third-parties that occurred in this case. (Cf. Colich & Sons, supra, 198 Cal.App.3d at pp. 1237-1238, 244 Cal. Rptr. 714 [cross-complainant in superior position to insure against damages at issue].) Given the independent obligations between Prince and PG & E, we conclude *561 that extending PG & E's immunity to bar the cross-complaint would result only in unfairness.
Additional policy considerations do not alter our conclusion. PG & E stresses that it pays for its negligence, if any, only if Prince also is negligent and liable to Jackson. Yet, this occurs frequently in cases in which the plaintiff chooses to pursue only one of multiple wrongdoers, and any implied contractual indemnity claim would be subject to the comparative negligence principles of American Motorcycle. (See Bay Development, supra, 50 Cal.3d at pp. 1031-1032, 269 Cal.Rptr. 720, 791 P.2d 290.) Additionally, although we recognize the availability of express indemnification provisions, we do not believe such provisions are an adequate substitute in all cases for implied contractual indemnity claims. It is often the case, as here, that the contracting parties are not of equal bargaining power. Also, in some situations, such as with an easement that runs with the land, the current parties to the contract may not be the same as the parties that negotiated the terms.

III. Conclusion
We conclude that use of Jackson I as legal precedent to establish PG & E's immunity vis-à-vis Jackson does not amount to a claim of collateral estoppel and does not violate Prince's due process rights. We also conclude that joint and several liability to the plaintiff is not a requirement of implied contractual indemnification. Because the "no indemnity without liability" principle, as applied to statutory limits on liability, is premised on the requirement of joint and several liability, it is inapplicable to a claim for implied contractual indemnification. Equitable considerations further support the conclusion that PG & E's statutory immunity from suit by the underlying plaintiff should not preclude Prince's cross-complaint for implied contractual indemnity.

IV. Disposition
The judgment is reversed. Costs are awarded to Cross-Complainant and Appellant Eve Prince.
McADAMS and DUFFY, JJ., concur.
NOTES
[1] All further statutory references are to the Civil Code unless otherwise noted.
[2] The recreational use immunity statute states: "This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner." (§ 846, emphasis added.)
[3] PG & E's written easement with Prince grants it the "the right to erect, maintain, replace, remove and use a line of poles ... and to suspend therefrom, maintain and use such wires as [PG & E] shall from time to time deem necessary for the transmission and distribution of electric energy, together with a right of way along said line of poles, over and across those certain premises."
[4] In this case, the court held that the statute of limitations for the underlying plaintiff's claim against a broker did not apply to a seller's claim against the same broker for implied contractual indemnity. (West, supra, 27 Cal.App.4th at pp. 1633-1635, 34 Cal. Rptr.2d 409.) In so holding, the court relied in part on the differing duties giving rise to the underlying plaintiff's claim (a broker's statutory duty to a purchaser) and the seller's claim (a duty to the seller arising from the broker-client agreement). (Id. at p. 1633, 34 Cal.Rptr.2d 409.)
[5] In this case, PG & E's defense is based on statutory immunity, not on a factual claim regarding a lack of causal relationship between PG & E's actions and Jackson's injury. As the issue is not before us, we do not determine whether a previous finding that PG & E is not liable to Jackson because its negligent actions did not cause Jackson's injury would bar an equitable indemnity claim regardless of its underlying theorycontractual or tort-based.