[No. D020635. Fourth Dist., Div. One. Sept. 1, 1994.]

MICHAEL K. WEST et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
WILLIS M. ALLEN COMPANY et al., Real Parties in Interest.

COUNSEL

James H. Flaherty for Petitioners.

No appearance for Respondent.

Wingert, Grebing, Anello & Brubaker, Michael M. Anello, Michael S. Burke and Cynthia Thornton for Real Parties in Interest.

OPINION

**WORK, Acting P. J.**—This action arises out of the sale of a house by Michael and Mary West to Wayne and Beverly Willerth. Willis M. Allen Company (Willis Allen) and two of its agents represented the parties in the sale. The Willerths sued the Wests, Willis Allen and the agents. After having prevailed on a summary judgment motion on the basis of a statute of limitations bar, the broker defendants settled with the Willerths for a waiver of costs. The Wests seek a writ of mandate after the court granted a motion for determination of good faith settlement and dismissed their cross-complaint for comparative indemnity and implied contractual indemnity.

We first conclude the court erred in finding the two-year statute of limitations for actions against real estate brokers for failing to disclose (Civ. Code, § 2079.4) applies to an implied contractual indemnity action between sellers and their broker. Having done so, we conclude there is no meaningful legal distinction between the instant case and *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159] (*Tech-Bilt*), in which the Supreme Court found a similar settlement did not constitute a good faith settlement within the meaning of Code of Civil Procedure[1] section 877.6. (38 Cal.3d at pp. 501-502.) Accordingly, we grant the petition.

BACKGROUND

The Wests' house suffered subsidence damage. They filed a claim with their insurer which investigated, doing extensive soils and geological testing. In the course of the insurance investigation, multiple reports were prepared, repair estimates made and photographs taken. The insurer settled, paying the Wests $325,000.

The Wests decided not to repair the property and instead put the house on the market in its distressed state. Their real estate broker for the transaction

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

was Andrew Nelson, president of Willis Allen. In October 1988, the Willerths purchased the house for $320,000. The Willerths were represented by a Willis Allen agent, Francine Ugoretz.

In February 1989, the Willerths, without having resided at the property and after making cosmetic repairs, sold the house to Richard and Nancee Swensson for $545,000. The Swenssons later filed an arbitration claim against the Willerths for fraud and to rescind the purchase. In May 1992, the Swenssons were granted rescission and awarded $213,879.

In February 1993, the Willerths sued Willis Allen, Nelson, Ugoretz and the Wests setting forth, inter alia, causes of action for breach of contract, fraud and negligent misrepresentation. The complaint alleges there was not full disclosure in the sale between the Wests and the Willerths. Although the Willerths acknowledge receiving a copy of a report issued by Owens Geotechnical Company entitled "Geotechnical Investigation of Distress—Phase II, West Residence" (Owens Phase II Report) from the Wests and Willis Allen, they contend the defendants withheld other relevant information obtained through the insurance investigation and that there were misstatements of fact on a disclosure statement. The Willerths further allege the Wests had disclosed the entire insurance file including all reports in their possession to Nelson.

The Wests cross-complained against Willis Allen, Nelson and Ugoretz for comparative indemnity and implied contractual indemnity.

Ugoretz, joined by Willis Allen and Nelson, moved for summary judgment against the Willerths, asserting the statute of limitations contained in Civil Code section 2079.4, which requires a purchaser of residential real property to bring an action for a broker's failure to inspect and disclose facts materially affecting the value of the property within two years. The broker defendants also argued the complaint was as a matter of law without merit because the Owens Phase II Report constituted adequate disclosure. The court granted the motion on the basis the statute of limitations barred the Willerths' claims as to the real estate defendants. The court did not refer to the adequacy of the broker's disclosure.

Before entry of judgment, the Willerths entered into a settlement agreement with Willis Allen and Nelson (hereafter collectively WA), under which the Willerths were to execute a request for dismissal with prejudice in exchange for a waiver of costs totaling $788.20. The court found the settlement in good faith and dismissed the Wests' cross-complaint.

The Wests petitioned this court for a writ of mandate. We issued an order to show cause and stayed the trial.[2]

### DISCUSSION

### I

▉▉▉ In this action, we are called upon to determine whether, applying the standards established in *Tech-Bilt*, the court abused its discretion in granting the motion for good faith settlement determination under section 877.6.

Section 877.6 pertinently provides:

"(a)(1) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff . . . and one or more alleged tortfeasors . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." The nonsettling tortfeasor, however, is entitled to a reduction equivalent to the amount of the settlement against any award that may be ultimately recovered by the plaintiff. (§ 877, subd. (a).)

In *Tech-Bilt*, homeowners sued the developer, Tech-Bilt, Inc. and the soils engineer, Woodward-Clyde & Associates (Woodward-Clyde) in connection with structural defects in their residence. The action against Woodward-Clyde was barred by a 10-year statute of limitations to recover for latent defects in improvements to real property contained in section 337.15. Woodward-Clyde and the plaintiffs settled. Rather than Woodward-Clyde bringing a summary judgment motion, the plaintiffs dismissed the action against Woodward-Clyde in exchange for Woodward-Clyde waiving its claim to recover $55 in costs. Tech-Bilt cross-complained against Woodward-Clyde for indemnity. Woodward-Clyde moved to confirm its settlement with the plaintiffs as a good faith settlement under section 877.6. The trial court

---

[2]We further requested WA to specifically brief under what authority a cause of action based on breach of the broker's duties to the Wests would be subject to the statute of limitations contained in Civil Code section 2079.4.

found the settlement to be in good faith and dismissed Tech-Bilt's cross-complaint from which Tech-Bilt appealed.

As a preliminary matter, the Supreme Court noted that had Woodward-Clyde obtained summary judgment on the plaintiffs' claim on statute of limitations grounds, it would not have barred Tech-Bilt's cross-complaint against Woodward-Clyde. This was so because under section 337.15 and *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 609 [189 Cal.Rptr. 871, 659 P.2d 1160], a cross-complaint for indemnity could be filed after the statute of limitations had run against the indemnitor as long as the underlying action against the indemnitee was brought within the 10-year limitation period, a situation that existed in *Tech-Bilt*. (*Tech-Bilt, supra*, 38 Cal.3d at p. 492.) The question presented to the court was therefore whether Tech-Bilt's right to cross-complain for equitable indemnity could be adversely affected by the underlying action of the homeowner against Woodward-Clyde being dismissed in return for a waiver of costs rather than being terminated through a summary judgment motion. (*Tech-Bilt, supra*, 38 Cal.3d at p. 492.)

The court concluded the test for determining whether a settlement is in "good faith" under section 877.6 was whether "the amount of the settlement [was] within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." (38 Cal.3d at p. 499.) The court set forth multiple nonexclusive factors to be considered in determining whether a settlement met the "reasonable range" test and concluded the party opposing a good faith determination should be permitted to demonstrate the settlement "is so far 'out of the ballpark' in relation to [those] factors as to be inconsistent with the equitable objectives of the statute." (*Id.* at pp. 499-500.)

The Supreme Court noted the plaintiffs had received nothing in return for the dismissal except not having to pay Woodward-Clyde's costs because they were wrongfully sued. (38 Cal.3d at p. 501.) The settlement in effect put the parties in the same relative position they would have occupied if the plaintiffs had not sued Woodward-Clyde to begin with. The court concluded under such circumstances immunizing Woodward-Clyde from liability to joint tortfeasors through section 877.6 did not serve the section's goals of encouraging settlement and allocating costs equitably among multiple tortfeasors. (38 Cal.3d at pp. 501-502.) While ordinarily a determination of good faith should be left to the discretion of the trial court, the Supreme Court found exercise of discretion under the circumstances could result in only one conclusion: the settlement was not in good faith within the meaning of section 877.6. (*Tech-Bilt, supra*, 38 Cal.3d at p. 502.)

The Wests contend the situation presented here is virtually identical to that presented in *Tech-Bilt* and that the trial court abused its discretion by granting the motion to determine good faith settlement and to dismiss the indemnity cross-complaint. On the other hand, WA contends the situation is unlike that found in *Tech-Bilt*, because the Wests' cross-complaint is barred under Civil Code section 2079.4 and the court was well within its discretion in determining the settlement to be in good faith since the case could reasonably have been evaluated at zero.

## II

We turn first to whether the Wests' cross-complaint for indemnity is barred by Civil Code section 2079.4. The section provides pertinently: "In no event shall the time for commencement of legal action for breach of the duty imposed by this article exceed two years from the date of possession . . . ." The duty referred to is defined in Civil Code section 2079 as "the duty of a real estate broker . . . to . . . prospective purchaser[s] of residential real property . . . to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective purchaser all facts materially affecting the value or desirability of the property that such an investigation would reveal . . . ."

In interpreting the sections, we apply familiar principles of statutory construction. "[W]e begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . . An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them. . . . Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. . . . If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856] [citations and quotation marks omitted].)

WA asks us to interpret the statute of limitations as applying not only to the Willerths' action, but also to the Wests' cross-complaint for indemnity. The Wests in their indemnity cross-complaint set forth causes of action for comparative indemnity and for implied contractual indemnity. The implied contractual indemnity cause of action is based on the broker-client agreement under which WA agreed to provide services for the Wests in connection with the sale of the house. It further alleges that by that agreement WA

agreed to fully perform their obligations and responsibilities in connection with the sale.

■ The right to implied contractual indemnity is predicated upon the indemnitor's breach of contract, "the rationale . . . being that a contract under which the indemnitor undertook to do work or perform services necessarily implied an obligation to do the work involved in a proper manner and to discharge foreseeable damages resulting from improper performance absent any participation by the indemnitee in the wrongful act precluding recovery." (*Great Western Furniture Co.* v. *Porter Corp.* (1965) 238 Cal.App.2d 502, 517 [48 Cal.Rptr. 76]; see also *Smoketree-Lake Murray Ltd.* v. *Mills Concrete Construction Co.* (1991) 234 Cal.App.3d 1724, 1738 [286 Cal.Rptr. 435].) "An action for implied contractual indemnity is not a claim for contribution from a joint tortfeasor; it is not founded upon a tort or upon any duty which the indemnitor owes to the injured third party. It is grounded upon the indemnitor's breach of duty *owing to the indemnitee* to properly perform its contractual duties." (*Bear Creek Planning Com.* v. *Title Ins. & Trust Co.* (1985) 164 Cal.App.3d 1227, 1238-1239 [211 Cal.Rptr. 172], italics in original, disapproved on other grounds in *Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1032, fn. 12 [269 Cal.Rptr. 720, 791 P.2d 290].)

■ The two-year statute of limitations contained in Civil Code section 2079.4 applies only to those actions for breach of a broker's duty created by Civil Code section 2079 to prospective purchasers to investigate and disclose. Under the plain wording of Civil Code section 2079.4, the implied contractual indemnity cause of action is not subject to the limitations since it is not predicated upon any breach of duty to the purchaser, the Willerths, under Civil Code section 2079, but rather upon a breach of duty to the sellers, the Wests, to properly perform the broker-client agreement.

WA argues the statute of limitations must be interpreted to apply to the Wests' cross-complaint, because of broad wording contained in Civil Code section 2079.4, and the fact the Legislature failed to specifically exempt indemnity actions as it did in section 337.15. The broad wording of Civil Code section 2079.4, that "[i]n no event" shall the time to commence legal action exceed two years, does nothing more than refer to those legal actions covered by the statute of limitations; it does not extend the limitations to actions not included within the section's terms. The Legislature did exempt certain indemnity actions from the statute of limitations contained in section 337.15, subdivision (a), but it did so after having *first* specifically included indemnity actions in those subject to the limitations. (§ 337.15, subd. (c).) In contrast, Civil Code section 2079.4 fails to specifically include actions for

indemnity. Had the Legislature intended to include indemnity causes of action, it knew how to do so.

WA additionally argues legislative history and the purpose of Civil Code section 2079 et seq. require application of the statute of limitations to indemnity actions. WA directs our attention to section 4 of Statutes 1985, chapter 223, pages 1222-1223, where the Legislature declared it intended to codify and make precise the holding of *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90 [199 Cal.Rptr. 383, 46 A.L.R.4th 521], the case establishing a broker's common law duty to investigate and to disclose to prospective purchasers of residential real property. The Legislature noted *Easton*'s imprecision in setting forth the extent of duties, standards and exceptions had created confusion among real estate licensees as to what was required of them and had caused insurers to modify coverage. The Legislature found it desirable to facilitate the issuance of professional liability insurance to protect the public through enactment of the statutory scheme.

WA argues that if indemnity actions by the broker's clients are not subjected to the statute of limitations provided by Civil Code section 2079.4, brokers would be afforded no protection since they would still be subject to defense and liability under the cross-complaints. WA claims virtually all cases involve such cross-claims, but provides no support for their position. WA further argues limiting the time in which indemnity actions may be brought will make the procurement of insurance coverage[3] more "feasible," serving the purpose of the legislation. It is unclear whether WA refers to the cost or availability of insurance; however, there is nothing to support a belief reduction of insurance premiums to the brokers was the Legislature's intent. Rather, the intent appears to be promoting the availability of insurance to protect the public.

Arguably, the imposition of the statute of limitations on indemnity claims of the broker's clients could facilitate the availability of liability insurance. However, as discussed above, even a broad interpretation of the wording of Civil Code section 2079.4 does not include an action for implied contractual indemnity based on the broker's duty to his client. A stated purpose of the Legislature was to provide for a comprehensive declaration of duties, standards and exceptions of a broker to prospective buyers as found to exist in *Easton* v. *Strassburger*, *supra*, 152 Cal.App.3d 90. (Stats. 1985, ch. 223, § 4,

---

[3]WA contends it does not have insurance coverage for either defense or indemnity in connection with the cross-complaint and argues the case presents a clear example of what the Legislature was attempting to avoid in enacting Civil Code section 2079. We find no support in the record for WA's claim it is without insurance; however, even assuming such to be the case, WA's specific insurance coverage is irrelevant to showing what actions the Legislature intended to cover under Civil Code section 2079.4.

pp. 1222-1223.) There is nothing in *Easton* dealing with indemnity actions or duties of a selling or listing broker to the seller. Additionally, our review of the legislative history of the 1985 enactment of Civil Code sections 2079 through 2079.5[4] has revealed no indication the Legislature intended indemnity actions to be barred by Civil Code section 2079.4. Based on the wording of the statute, existing case law and review of the legislative history, we conclude the Legislature at a minimum did not intend to include a seller's action for implied contractual indemnity based on a broker's breach of duty to the seller.[5]

### III

A settlement for a waiver of costs only may be in "good faith" within the meaning of section 877.6 and *Tech-Bilt*. A waiver of costs is legal consideration which would affect a reduction in any later award to the plaintiff under section 877, subdivision (a), and if the settlement is otherwise within the "reasonable range" test of *Tech-Bilt*, it may be found to be in good faith. (*Armstrong World Industries, Inc.* v. *Superior Court* (1989) 215 Cal.App.3d 951, 955-958 [264 Cal.Rptr. 39].) One factor to be considered in determining good faith is the trial court's rough approximation of the plaintiff's total recovery. (*Tech-Bilt, supra*, 38 Cal.3d at p. 499.) WA argues that the court did not abuse its discretion in determining the settlement was in good faith because the court could have concluded the Willerths' claim against all defendants had no value, bringing the settlement within the "reasonable range."

In their motion for good faith settlement, WA argued the settlement was in good faith both because the court's summary judgment determination resulted in their having absolutely no liability exposure to the Willerths and

[4]Our review included: All amended versions of Senate Bill No. 453 (1985-1986 Reg. Sess.); Senate Bill No. 453, Senate Final History (1985-1986 Reg. Sess.) p. 341; Senate Committee on Insurance, Claims and Corporations, Analysis of Senate Bill No. 453 (1985-1986 Reg. Sess.) as amended April 11, 1985 (available at Cal. State Archives); Senate Rules Committee, Analysis of Senate Bill No. 453 (1985-1986 Reg. Sess.) as amended April 22, 1985 (available at Cal. State Archives); California Department of Insurance, Analysis of Senate Bill No. 453 (1985-1986 Reg. Sess.) as introduced (Apr. 11, 1985), available at California State Archives; Assembly Committee on Finance and Insurance, Analysis of Senate Bill No. 453 (1985-1986 Reg. Sess.) as amended April 22, 1985 (available at Cal. State Archives); Assembly Committee on Finance and Insurance, Background Information on Senate Bill No. 453 (1985-1986 Reg. Sess.), available at California State Archives; Assembly Office of Research, third reading analysis of Senate Bill No. 453 (1985-1986 Reg. Sess.); and Senate Committee on Insurance, Claims and Corporations, action taken on and sponsor's introduction to Senate Bill No. 453 (1985-1986 Reg. Sess.), available in Legislative Bill File of Senator Robbins at California State Archives.

[5]We express no opinion whether other causes of action for equitable contribution or equitable indemnity would be subject to the statute of limitations of section 2079.4.

because the facts of the case demonstrate the chances of the Willerths prevailing against any of the defendants are slim at best. In support of the motion, WA requested the court to take judicial notice of the undisputed facts as outlined in the summary judgment motions and make an independent determination of the value of the case. The court's order granting the motion for good faith settlement does not provide the basis for its ruling. When presented with the same evidence in the summary judgment motion, however, the court granted the motion not because it concluded the case was without merit but because the statute of limitations barred the Willerths' claims against WA.

In its opposition to the good faith settlement, the Wests included a declaration from the Willerths' counsel stating, inter alia, that: (1) the settlement was not based on the level of culpability of the moving parties, but rather on the statute of limitations barring the Willerths' recovery against the broker; (2) the parties at no time agreed the statute of limitations applied to indemnity claims; (3) the Willerths gained nothing from the settlement except relief from having to pay costs; and (4) the amount of damages were between $500,000 and $1 million. The Wests also argued the Willerths had demanded $325,000 to settle.

■ A plaintiff's claims for damages are not determinative in finding good faith. (See *Horton* v. *Superior Court* (1987) 194 Cal.App.3d 727, 735-736 [238 Cal.Rptr. 467].) Rather, the court is called upon to make a "rough approximation" of what the plaintiff would actually recover. ■ Here, however, there is no evidence the court made such an approximation, or that the "value" of the suit formed a basis for the court's ruling. WA claims the facts were "undisputed" in the summary judgment motion, but fails to provide the opposition to that motion or the vast majority of its own evidentiary support for that motion.

■ Section 877.6 is grounded in the equitable policies of the "encouragement of settlements and the equitable allocation of costs among multiple tortfeasors." (*Tech-Bilt, supra,* 38 Cal.3d at pp. 498-499.) ■ Here, as in *Tech-Bilt,* to shield WA with immunity from cross-claims by the Wests, their clients who fully disclosed to them all material from the insurance file and relied upon them for expertise in what should be provided to the Willerths, neither serves the goal of encouraging settlement among all interested parties nor promotes the goal of equitable allocation among multiple tortfeasors. The true value in the "settlement" to WA was not the dismissal of the Willerths' claims as to them, claims as to which they had already prevailed on the summary judgment motion, but rather the dismissal of the indemnity claims of their clients based upon breach of WA's duty to perform under the

listing agreement. Accordingly, we conclude the trial court abused its discretion in finding the settlement to be in good faith, and grant the petition.

## DISPOSITION

Let a writ issue directing the trial court to vacate its order granting the motion for determination of good faith settlement and dismissing cross-complaints and to enter a new order consistent with this opinion. The stay issued March 30, 1994, is vacated.

Froehlich, J., and Nares, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied December 15, 1994.