[No. G041507. Fourth Dist., Div. Three. Sept. 2, 2011.]

PACIFICARE OF CALIFORNIA et al., Cross-complainants and Appellants,
v.
BRIGHT MEDICAL ASSOCIATES, INC., Cross-defendant and Appellant.

COUNSEL

Sedgwick, Christina J. Imre, Douglas J. Collodel; Brownstein Hyatt Farber Schreck, Edward A. Stumpp; Horvitz & Levy and Mitchell C. Tilner for Cross-complainants and Appellants.

Carroll, Kelly, Trotter, Franzen & McKenna and David P. Pruett for Cross-defendant and Appellant.

OPINION

ARONSON, Acting P. J.—Plaintiffs Jerry Jay Martin, Jerry Lloyd Martin, Tressa Brown, and Lisa Vindell (collectively the Martins) filed the underlying action against defendants and cross-complainants PacifiCare of California doing business as Secure Horizons and PacifiCare Health Systems, LLC (collectively PacifiCare). The Martins asserted claims for insurance bad faith based on delays their wife and mother, Elsie Martin (Elsie),[1] experienced while seeking out-of-network treatment for a cerebral aneurysm. The aneurysm ruptured and Elsie died before receiving the necessary care.

Elsie's primary care physician belonged to cross-defendant Bright Medical Associates, Inc. (Bright), the health care provider that contracted with PacifiCare to deliver medical services to PacifiCare subscribers. Although Bright made all the decisions that delayed Elsie's medical care, the Martins did not file a claim against Bright. Instead, PacifiCare joined Bright in this action by filing a cross-complaint seeking indemnity. During jury selection, Bright settled with the Martins for $300,000, conditioned on the trial court finding Bright and the Martins settled in good faith. PacifiCare appeals from the trial court order granting Bright's good faith settlement motion and dismissing PacifiCare's cross-complaint against Bright.

PacifiCare contends the trial court lacked authority to make a good faith settlement determination because PacifiCare and Bright did not share joint

---

[1] We refer to Elsie by her first name to avoid any confusion with other members of her family. No disrespect is intended. (*Fazzi v. Klein* (2010) 190 Cal.App.4th 1280, 1282, fn. 1 [119 Cal.Rptr.3d 224].)

liability for the Martins' damages. According to PacifiCare, Bright bears all liability because the Martins based their claims on Bright's acts or omissions only and PacifiCare cannot be held vicariously liable for Bright's conduct as a matter of law. The Martins, however, alleged PacifiCare's conduct in designing and implementing its health care service plan contributed to the delays in Elsie's medical care. Because a good faith settlement may be sought in any action in which two or more parties are "alleged" to be "joint tortfeasors" (Code Civ. Proc., § 877.6, subd. (a)(1)), we conclude the trial court had authority to grant Bright's good faith settlement motion.

PacifiCare also contends the trial court abused its discretion in determining Bright and the Martins settled in good faith because the trial court failed to consider Bright's indemnity liability to PacifiCare for attorney fees. In PacifiCare's view, Bright's $300,000 settlement is grossly disproportionate to its liability for the nearly $1.5 million in attorney fees PacifiCare incurred in opposing the Martins' claims. As explained below, we conclude PacifiCare has no viable attorney fees claim against Bright and therefore cannot urge that claim as a basis for finding Bright settled in bad faith.

We affirm the trial court's order granting Bright's good faith settlement motion and dismissing PacifiCare's cross-complaint. Our decision on PacifiCare's appeal renders Bright's cross-appeal from the order denying its summary judgment motion moot. We therefore dismiss the cross-appeal.

I

FACTS AND PROCEDURAL HISTORY

A.  *PacifiCare and Bright*

PacifiCare is a licensed health care service plan under California's Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq.).[2] The Knox-Keene act defines a "health care service plan" as "[a]ny person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost for those services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees." (Health & Saf. Code, § 1345, subd. (f)(1).) PacifiCare is not licensed to practice medicine and it does not directly provide medical care to its subscribers. (Civ. Code, § 3428, subd. (c);

---

[2] We refer to PacifiCare as a health care service plan or plan throughout this opinion because that is the terminology used in the Knox-Keene act. Health care service plans also are commonly referred to as HMO's or health maintenance organizations. (*Watanabe v. California Physicians' Service* (2008) 169 Cal.App.4th 56, 59, fn. 3 [86 Cal.Rptr.3d 374] (*Watanabe*).)

Health & Saf. Code, § 1395, subd. (b).) Instead, PacifiCare contracts with "providers"[3] to deliver medical care to subscribers who enroll in its plans.

Bright is a health care provider PacifiCare hired to provide health care to PacifiCare's subscribers. The contract between PacifiCare and Bright requires Bright to provide health care to each PacifiCare subscriber who selects a member of Bright's medical group as his or her primary care physician. The contract also requires Bright to perform utilization review on PacifiCare's behalf. Utilization review is the process physicians utilize to determine whether a particular service or treatment is medically necessary and therefore covered by the applicable health care service plan. Although PacifiCare delegated this function to Bright, it retained final authority to determine whether Bright's physicians should provide a particular service or treatment. All PacifiCare subscribers have the right to appeal any utilization review decision to PacifiCare and PacifiCare may reverse Bright's health care decisions.

## B. *Elsie's Health Care*

Elsie enrolled in PacifiCare's Secure Horizons plan and selected a Bright physician for her primary care. In August 2003, Bright diagnosed Elsie with a large cerebral aneurysm. Due to the aneurysm's size, Bright lacked the expertise to treat it within its medical provider network and therefore referred Elsie for out-of-network treatment at the University of Southern California Medical Center (USC).

Although Elsie consulted with a neurosurgeon at USC in September 2003, Bright did not approve the neurosurgeon's recommended treatment until mid-December 2003, despite multiple requests. Bright approved the procedure only after requiring Elsie to undergo what the USC neurosurgeon characterized as an unnecessary angiogram. After receiving the approval, USC scheduled the treatment for early February 2004. Tragically, Elsie's aneurysm burst in January 2004 and she died after the doctors removed her from life support.

At no time did Elsie or anyone acting on her behalf contact PacifiCare to iscuss Elsie's medical care or challenge Bright's utilization review decisions.

---

[3] " 'Provider' means any professional person, organization, health facility, or other person or institution licensed by the state to deliver or furnish health care services." (Health & Saf. Code, § 1345, subd. (i).)

### C. *The Trial Court Proceedings*

The Martins filed the underlying lawsuit in April 2005. They did not name Bright or any of its physicians as defendants. Instead, the Martins named PacifiCare as the only defendant and alleged two causes of action based on insurance bad faith: a wrongful death cause of action on behalf of Elsie's husband and adult children, and a survival cause of action for breach of the implied covenant of good faith and fair dealing.

The operative second amended complaint alleged Elsie enrolled in PacifiCare's Secure Horizons plan and PacifiCare promised to timely provide her with all necessary medical care. The Martins allege PacifiCare and "its delegated in-network agent, Bright Medical Associates, Inc.," caused Elsie to suffer a "massive cranial bleed" that led to her death. Although the Martins alleged Bright made the decisions that delayed Elsie's treatment, they alleged PacifiCare was liable for the delay because, as Elsie's health insurer, PacifiCare owed a nondelegable duty to ensure Elsie timely received all necessary medical care and treatment. In addition to the allegation PacifiCare was vicariously liable for Bright's acts or omissions in delaying Elsie's health care, the Martins alleged PacifiCare was directly liable for "[u]nreasonably implementing a defective utilization review process," "[u]nreasonably designing and implementing a health care plan that fails to offer continuity in the provision of medical treatments and services," and "failing to establish and implement the appropriate structures and mechanisms for the oversight of delegated [quality improvement] and [utilization management] activities . . . ."

PacifiCare filed a cross-complaint seeking indemnity from Bright.

During jury selection, Bright and the Martins agreed to a settlement after PacifiCare refused to discuss settling the indemnity claim. Bright agreed to pay the Martins $300,000 conditioned on the trial court finding Bright and the Martins settled in good faith. The trial court granted Bright's good faith settlement motion and thereafter entered an order dismissing PacifiCare's cross-complaint against Bright.

Trial proceeded on the Martins' claims against PacifiCare. After the Martins completed their case-in-chief, the trial court granted PacifiCare's nonsuit motion, finding the Martins' evidence supported recovery only on a vicarious liability theory, but Health and Safety Code section 1371.25 (section 1371.25) barred recovery. The trial court based its ruling on *Watanabe, supra*, 169 Cal.App.4th 56, which holds section 1371.25 bars holding a health care service plan vicariously liable for its health care provider's acts or omissions. (*Watanabe*, at pp. 63–64.) Our opinion in

*Martin v. PacifiCare of California* (2011) 198 Cal.App.4th 1390 [130 Cal.Rptr.3d 714] (*Martin*), affirms the trial court's decision to grant PacifiCare's nonsuit motion.

After the trial court entered judgment against the Martins, PacifiCare timely appealed the trial court's order granting Bright's good faith settlement motion and dismissing PacifiCare's cross-complaint. Bright cross-appealed from an earlier trial court decision denying Bright summary judgment on PacifiCare's cross-complaint.

## II

### Discussion

PacifiCare challenges the trial court's good faith settlement determination on two main grounds. First, PacifiCare argues the trial court lacked authority to make a good faith settlement determination because PacifiCare and Bright did not share joint liability for the Martins' damages. Second, PacifiCare argues the trial court abused its discretion in finding Bright and the Martins settled in good faith because the trial court failed to consider Bright's indemnity liability to PacifiCare for the attorney fees PacifiCare incurred in defending the Martins' claims.

A. *The Trial Court Correctly Considered Bright a Joint Tortfeasor Entitled to Seek a Judicial Determination It Settled with the Martins in Good Faith*

    1. An Alleged Joint Tortfeasor May Seek a Good Faith Settlement Determination

"Any party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors . . . ." (Code Civ. Proc., § 877.6, subd. (a)(1).) "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor . . . from any further claims against the settling tortfeasor . . . for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (Code Civ. Proc., § 877.6, subd. (c).) A good faith finding also reduces the claims against the nonsettling tortfeasors in the amount stipulated by the settlement. (Code Civ. Proc., § 877, subd. (a).)

As used in these statutes, the term "joint tortfeasor" is broadly construed: "In many cases courts have construed the term 'joint tortfeasor,' as used in Code of Civil Procedure sections 877 and 877.6, quite broadly to apply not

only to 'those who act in concert in causing an injury' [citation] but generally to 'joint, concurrent and successive tortfeasors' [citations], and even more generally to 'all tortfeasors joined in a single action' whose acts or omissions 'concurred to produce the sum total of the injuries to the plaintiff.' [Citations.]" (*Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1341 [46 Cal.Rptr.2d 516]; see also *Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1272 [38 Cal.Rptr.3d 333] ["By indicating that the good faith settlement applies to the 'vicariously or derivatively liable tortfeasor' [citation] and to 'multiple tortfeasors' [citation], the Supreme Court suggested that the term joint tortfeasor as used in section 877.6 has a broad meaning"].)

To be a joint tortfeasor, a "party need not be found liable in tort." (*Hartford Accident & Indemnity Co. v. Superior Court* (1995) 37 Cal.App.4th 1174, 1179 [44 Cal.Rptr.2d 126] (*Hartford*).) Because Code of Civil Procedure section 877.6's first sentence uses the word "alleged" to describe the tortfeasors entitled to seek a good faith settlement determination, allegations that two or more parties are joint tortfeasors satisfies that statutory requirement. (*Hartford*, at p. 1179.)

Any joint tortfeasor who settles with a plaintiff is entitled to have the trial court determine if the settlement is in good faith regardless of "whether the tortfeasors acted in concert to create a single injury, or successively to create distinct and divisible injuries [citation] . . . ." (*Bob Parrett Construction, Inc. v. Superior Court* (2006) 140 Cal.App.4th 1180, 1188 [45 Cal.Rptr.3d 250].)

## 2. The Complaint Alleged Bright and PacifiCare Acted as Joint Tortfeasors

PacifiCare contends section 1371.25 abolishes any joint liability it may have shared with Bright for the delays in Elsie's medical care and therefore renders any liability several only. This argument, however, fails because it is based on an erroneous assumption about the Martins' claims and a misunderstanding regarding section 1371.25's effect.

PacifiCare erroneously assumes it had no direct liability to the Martins for the delays in Elsie's health care. According to PacifiCare, the Martins did not seek to hold PacifiCare liable for any acts or omissions it committed. Rather, PacifiCare argues, the Martins pursued their claims against PacifiCare exclusively on a nondelegable duty theory that PacifiCare was liable for Bright's malfeasance in performing the utilization review.

The Martins' nondelegable duty theory against PacifiCare was not the only basis on which they sought to hold PacifiCare liable. The Martins alleged in

the operative second amended complaint that, "In addition to its non-delegable duty of good faith and fair dealing, [PacifiCare] assume[d] a heightened duty under the standards promulgated by the National Committee on Quality Assurance [NCQA]," a nonprofit organization that accredits managed care organizations. Under these standards, the Martins alleged PacifiCare agreed to oversee any function it delegated to a third party and to remain accountable for the timely and proper performance of all delegated functions. The second amended complaint alleged that PacifiCare breached the duty of good faith and fair dealing it owed Elsie by "[u]nreasonably implementing a defective utilization review process," "[u]nreasonably designing and implementing a health care plan that fails to offer continuity in the provision of medical treatments and services," and "failing to establish and implement the appropriate structures and mechanisms for the oversight of delegated [quality improvement] and [utilization management] activities as required by the NCQA standards."

In seeking a good faith settlement determination, Bright pointed out the Martins' direct liability theories against PacifiCare. At oral argument on the motion, the Martins acknowledged that a nondelegable duty served as their primary liability theory, but also emphasized that, "separate and apart from that, there is direct liability as well." The trial court also questioned whether PacifiCare's liability was "completely derivative," as PacifiCare argued. PacifiCare repeatedly asserts that its liability was based solely on Bright's acts or omissions, but PacifiCare fails to cite any specific evidence or authority showing the Martins' direct liability theories lacked merit as a matter of law.

We acknowledge our opinion in *Martin* concludes the Martins failed to establish their direct liability theory against PacifiCare. (*Martin, supra,* 198 Cal.App.4th at pp. 1408–1409.) That conclusion, however, is based upon the record as it existed when the trial court granted PacifiCare's nonsuit motion—that is, after the Martins presented their entire case to the jury. In reviewing the trial court's good faith settlement ruling, we are limited to the information available at the time Bright and the Martins reached their settlement. (*Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499 [213 Cal.Rptr. 256, 698 P.2d 159] (*Tech-Bilt*); *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 962 [124 Cal.Rptr.3d 78].) Here, the Martins and Bright settled before the Martins presented any evidence at trial. Moreover, as explained above, the good faith settlement procedure does not require Bright to prove PacifiCare acted as a joint tortfeasor because allegations to that effect are sufficient. (Code Civ. Proc., § 877.6, subd. (a)(1); *Hartford, supra,* 37 Cal.App.4th at p. 1179.)

Assuming the Martins clearly "alleged" PacifiCare and Bright acted as "joint tortfeasors," PacifiCare nonetheless contends the good faith settlement

statute (Code Civ. Proc., § 877.6) does not apply because section 1371.25 renders any liability by PacifiCare and Bright several only. PacifiCare bases this argument on section 1371.25's first sentence, which states "A plan, any entity contracting with a plan, and providers are each responsible for their own acts or omissions, and are not liable for the acts or omissions of, or the costs of defending, others." (§ 1371.25.)

Our opinion in *Martin* concludes section 1371.25 bars an action holding PacifiCare vicariously liable for Bright's acts or omissions. PacifiCare would be liable to the Martins only if it directly committed some act or omission contributing to the delays in Elsie's health care. (*Martin, supra,* 198 Cal.App.4th at p. 1409.) In reaching this result, we did not address whether PacifiCare and Bright could be jointly liable if they both committed acts or omissions contributing to the delays in Elsie's health care.

In *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (*American Motorcycle*), the Supreme Court explained the nature of joint liability and its relation to vicarious liability: "Under well-established common law principles, a negligent tortfeasor is generally liable for all damage of which his negligence is *a* proximate cause; stated another way, in order to recover damages sustained as a result of an indivisible injury, a plaintiff is not required to prove that a tortfeasor's conduct was *the sole* proximate cause of the injury, but only that such negligence was *a* proximate cause. [Citations.] . . . [¶] In cases involving multiple tortfeasors, the principle that each tortfeasor is personally liable for any indivisible injury of which his negligence is a proximate cause has commonly been expressed in terms of 'joint and several liability.' . . . [¶] . . . [¶] In the concurrent tortfeasor context, however, the 'joint and several liability' label does not express the imposition of any form of vicarious liability, but instead simply embodies the general common law principle, noted above, that a tortfeasor is liable for any injury of which his negligence is a proximate cause. Liability attaches to a concurrent tortfeasor in this situation not because he is responsible for the acts of other independent tortfeasors who may also have caused the injury, but because he is responsible for all damage of which his own negligence was a proximate cause." (*Id.* at pp. 586–587, original italics.)

With this understanding regarding the nature of joint and several liability, it is clear section 1371.25 does not make PacifiCare and Bright's liability several only. By alleging both PacifiCare and Bright committed acts or omissions contributing to the delays in Elsie's health care, the Martins alleged PacifiCare and Bright were jointly and severally liable for the damages those delays caused. Liability arises from PacifiCare's and Bright's own acts or omissions and makes both potentially responsible for the full

amount of the Martins' damages.[4] Section 1371.25's first sentence does not apply because neither PacifiCare nor Bright would be liable for the other's acts or omissions if the Martins had prevailed on their direct liability theory. Our opinion in *Martin* explains section 1371.25 prevents PacifiCare from being held vicariously liable for Bright's acts or omissions. (*Martin, supra,* 198 Cal.App.4th at p. 1393.) But section 1371.25 does not prevent PacifiCare from being jointly and severally liable with Bright if they *both* contributed to the Martins' damages.

■ Section 1371.25's third sentence bolsters our conclusion that the first sentence does not bar joint and several liability. The third sentence states "[n]othing in this section shall preclude a finding of liability on the part of a plan, any entity contracting with a plan, or a provider, based on the doctrines of equitable indemnity, comparative negligence, contribution, or other statutory or common law bases for liability." (§ 1371.25.) As explained in *Watanabe*, "it is clear that under the third sentence an entity that has committed an act or omission for which it is liable remains liable for that act or omission, *even if it shares liability with another entity*. All three doctrines enumerated in the third sentence of section 1371.25—equitable indemnity, comparative negligence and contribution—are instances when one or more parties are liable for an act or omission. [Citations.]" (*Watanabe, supra,* 169 Cal.App.4th at p. 64, original italics.) Section 1371.25's legislative history confirms that joint and several liability is one of the "other statutory or common law bases for liability" preserved by the statute's third sentence. (Sen. Com. on Judiciary, com. on Assem. Bill No. 1840 (1995–1996 Reg. Sess.) as amended Aug. 21, 1995, p. 3 [legislative amendment of section 1371.25's third sentence to include statutory and common law bases of liability intended to ensure joint and several liability preserved among plans and providers].)[5]

---

[4] That liability is potentially subject to certain statutory limitations on the amount and type of damages, but those limitations are not relevant to the question whether PacifiCare and Bright share any liability at all. One example of a statutory limitation on the amount and type of damages is Proposition 51, which makes defendants in an action for personal injury, property damage, or wrongful death jointly and severally liable for the plaintiff's economic damages, but severally liable for the plaintiff's noneconomic damages. (Civ. Code, §§ 1431–1431.2.)

[5] We grant PacifiCare's request to judicially notice the Senate Judiciary Committee's report, but deny the request on all other documents. Bright opposes PacifiCare's request because it includes voluminous documents that are not properly part of the statute's legislative history. A Senate Judiciary Committee report analyzing a statute, however, is part of the statute's legislative history and properly subject to judicial notice. (*Anders v. Superior Court* (2011) 192 Cal.App.4th 579, 590, fn. 3 [121 Cal.Rptr.3d 465].) Bright also argues resort to legislative history materials is unnecessary because section 1371.25 is unambiguous. Both the United States and California Supreme Courts have stated that legislative history materials may properly be considered to confirm or bolster a court's interpretation of an unambiguous statute.

█ Contrary to PacifiCare's contention, the trial court did not lack authority to determine whether the Martins and Bright settled in good faith. Because the Martins alleged both PacifiCare and Bright contributed to the delays in Elsie's health care, PacifiCare and Bright are treated as joint tortfeasors under the good faith settlement statutes.

### B. *Bright and the Martins Settled in Good Faith*

#### 1. Good Faith Settlement Standards

█ A good faith settlement under Code of Civil Procedure sections 877 and 877.6 must strike a balance between the competing public policies of encouraging settlements and the equitable sharing of liability among parties at fault. (*Tech-Bilt, supra*, 38 Cal.3d at pp. 498–499.) To determine whether a settlement is in good faith a trial court must inquire "whether the amount of the settlement is within the .reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." (*Id.* at p. 499.) By necessity, this " 'reasonable range' " test "leaves substantial latitude to . . . the discretion of the trial court" (*id.* at p. 500) and the trial court's "decision may be reversed only upon a showing of abuse of discretion" (*TSI Seismic Tenant Space, Inc. v. Superior Court* (2007) 149 Cal.App.4th 159, 165 [56 Cal.Rptr.3d 751] (*TSI*)).

The seminal *Tech-Bilt* case identified a nonexhaustive list of factors a trial court should consider in applying this " 'reasonable range' " test, recognizing these factors may not apply in all cases. The factors the *Tech-Bilt* court identified are (1) "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability"; (2) "the amount paid in settlement"; (3) "the allocation of settlement proceeds among plaintiffs"; (4) "a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial"; (5) "the financial conditions and insurance policy limits of settling defendants"; and (6) "the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." (*Tech-Bilt, supra*, 38 Cal.3d at p. 499.)

█ A settlement does not lack good faith solely because the settling tortfeasor pays " 'less than his [or her] theoretical proportionate or fair share.' " (*Tech-Bilt, supra*, 38 Cal.3d at p. 499.) Discounting a settling tortfeasor's proportional share is appropriate because a plaintiff's " 'damages are often speculative, and the probability of legal liability therefor is often uncertain or remote. . . .' " (*Ibid.*) "[P]ractical considerations obviously

(*Samantar v. Yousuf* (2010) 560 U.S. ___, ___, fn. 9 [176 L.Ed.2d 1047, 130 S.Ct. 2278, 2287, fn. 9]; *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 316 [93 Cal.Rptr.3d 559, 207 P.3d 20].)

require that the evaluation be made on the basis of information available at the time of settlement." (*Ibid.*)

In the end, "[t]he ultimate determinant of good faith is whether the settlement is grossly disproportionate to what a reasonable person at the time of settlement would estimate the settlor's liability to be." (*City of Grand Terrace v. Superior Court* (1987) 192 Cal.App.3d 1251, 1262 [238 Cal.Rptr. 119].) "[A] 'good faith' settlement does not call for perfect or even nearly perfect apportionment of liability. In order to encourage settlement, it is quite proper for a settling defendant to pay less than his proportionate share of the anticipated damages. What is required is simply that the settlement not be grossly disproportionate to the settlor's fair share." (*Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 874–875 [239 Cal.Rptr. 626, 741 P.2d 124].)

The party challenging a settlement's good faith bears the burden to show "the settlement is so far 'out of the ballpark' in relation to [the *Tech-Bilt*] factors as to be inconsistent with the equitable objectives of the [good faith settlement] statute." (*Tech-Bilt, supra,* 38 Cal.3d at pp. 499–500; Code Civ. Proc., § 877.6, subd. (d).)

## 2. The Settlement Between Bright and the Martins

PacifiCare does *not* contest the settlement's good faith on the ground it undervalues Bright's fair share of liability to the Martins. Indeed, PacifiCare asserts neither Bright nor PacifiCare faces any liability to the Martins. Bright faces no liability, according to PacifiCare, because the Martins never asserted a claim against Bright and the statute of limitations expired on any claim they had well before Bright and the Martins settled. PacifiCare contends it faces no liability to the Martins because it did nothing to contribute to the delays in Elsie's health care and section 1371.25 precludes the Martins from holding it vicariously liable for Bright's delays.

Instead, PacifiCare challenges the settlement's good faith by arguing Bright and the Martins settled solely to bar PacifiCare's indemnity claim against Bright for the attorney fees PacifiCare incurred in defending the Martins' claims. According to PacifiCare, the trial court abused its discretion in granting Bright's good faith settlement motion because the trial court failed to consider Bright's indemnity liability for PacifiCare's attorney fees.

When evaluating whether the parties reached a settlement in good faith, a trial court must examine not only the settling tortfeasor's potential liability to the plaintiff, but also the settling tortfeasor's potential liability to all nonsettling tortfeasors. (*West v. Superior Court* (1994) 27 Cal.App.4th

1625, 1636–1637 [34 Cal.Rptr.2d 409] (*West*); *TSI, supra*, 149 Cal.App.4th at p. 166.) In *West*, the trial court found a good faith settlement for a cost waiver because the statute of limitations barred the plaintiff's claims against the settling defendant. (*West*, at p. 1629.) The Court of Appeal reversed because the trial court failed to consider indemnity liability, explaining the settling defendant still faced substantial indemnity liability to the nonsettling defendants for the portion of the plaintiff's damages the settling defendant caused. (*Id.* at pp. 1635–1637.)

In *TSI*, evidence showed a defendant caused the plaintiff approximately $3.4 million in damages, but the plaintiff settled with that defendant for just $50,000 based on a contractual provision limiting the settling defendant's liability to the plaintiff. The Court of Appeal reversed the trial court's good faith settlement determination because it failed to consider the settling defendant's indemnity liability to the nonsettling defendants for the substantial damages the settling defendant caused. (*TSI, supra*, 149 Cal.App.4th at pp. 167–168.)

Both *West* and *TSI* involved settlements where the true value to the settling defendant lay not in resolving the plaintiff's claims, but in providing a bar to the nonsettling defendants' indemnity claims against the settling defendant. Evidence in both cases showed the settling defendants faced substantial indemnity liability, but settled for a nominal amount in comparison to their potential liability. (*West, supra*, 27 Cal.App.4th at p. 1636; *TSI, supra*, 149 Cal.App.4th at p. 167.) Neither *West* nor *TSI*, however, involved an indemnity claim for attorney fees.

PacifiCare's opposition to Bright's good faith settlement motion included a declaration explaining PacifiCare incurred nearly $1 million in attorney fees at that point, and estimated it would incur an additional $350,000 to $500,000 to conclude the trial. PacifiCare contends Bright's $300,000 settlement is grossly disproportionate to Bright's indemnity liability for these attorney fees and therefore Bright did not settle in good faith. But, unlike *West* and *TSI*, PacifiCare failed to present evidence or authority demonstrating its indemnity claim had any viability.

PacifiCare contends it could recover its attorney fees from Bright under the tort of another doctrine or Code of Civil Procedure section 1021.6 because PacifiCare incurred those fees solely to defend claims based on Bright's acts or omissions, rather than anything PacifiCare did or failed to do.[6] Assuming

---

[6] As announced by the Supreme Court in *Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618 [30 Cal.Rptr. 821, 381 P.2d 645], the tort of another doctrine provides that "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover

the Martins based their claims against PacifiCare solely on Bright's acts or omissions, section 1371.25 bars PacifiCare's indemnity claim for attorney fees against Bright.

Our opinion in *Martin* explains section 1371.25's first sentence prevents the Martins from holding PacifiCare vicariously liable for Bright's acts or omissions because it states health care service plans and health care providers "are not liable for the acts or omissions of . . . others." (§ 1371.25; see *Martin, supra*, 198 Cal.App.4th at p. 1399.) That same sentence also states plans and providers "are not liable for . . . the costs of defending . . . others." (§ 1371.25.) Hence, section 1371.25's first sentence provides PacifiCare with a complete defense to all vicarious liability claims based on its providers' acts or omissions, but also prevents PacifiCare from recovering the attorney fees it incurs in asserting that defense.

PacifiCare argues we should not interpret section 1371.25 to bar its attorney fees claim because section 1371.25's purpose is to ensure health care service plans and health care providers bear responsibility for their own acts or omissions. According to PacifiCare, interpreting the statute to bar its attorney fees claim would force PacifiCare to bear responsibility for Bright's acts or omissions because it was compelled to spend a substantial amount in attorney fees to defend claims based solely on Bright's conduct. But allowing PacifiCare's attorney fees claim would ignore section 1371.25's plain language and render the phrase "the costs of defending" surplusage. PacifiCare provides no explanation how its argument can be reconciled with the statute's plain language.

" 'In interpreting this statute, our goal is to determine the intent of the Legislature and thereby effectuate the purpose of the law. [Citation.] To do so, we apply certain fundamental rules of statutory interpretation. " 'Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citations.]' "

---

compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Id.* at p. 620.) The doctrine is not an exception to the American rule that the party employing an attorney pays the attorney's fees, but rather an item of damages recoverable for another's wrongful conduct. (*Id.* at p. 621.)

Code of Civil Procedure section 1021.6 states as follows: "Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict."

[Citations.]' [Citation.] We reject an interpretation that would render particular terms mere surplusage, and instead seek to give significance to every word. [Citation.] 'When the language of a statute is clear, we need go no further. . . .' [Citation.]" (*Bay Guardian Co. v. New Times Media LLC* (2010) 187 Cal.App.4th 438, 453–454 [114 Cal.Rptr.3d 392].)  ■  Section 1371.25 plainly states neither plans nor providers are liable for the costs of defending others.

PacifiCare contends section 1371.25's third sentence preserves its right to recover attorney fees as part of its indemnity claim by stating the section shall not preclude liability "based on the doctrines of equitable indemnity, comparative negligence, contribution, or other statutory or common law bases for liability." (§ 1371.25.) Our opinion in *Martin* explains this sentence preserves claims seeking to allocate responsibility for paying damages when more than one party is at fault. (*Martin, supra*, 198 Cal.App.4th at pp. 1401–1402.) Indeed, all three doctrines identified in the third sentence—equitable indemnity, comparative negligence, and contribution— apply to allocate responsibility for the payment of damages when multiple parties are at fault. (*American Motorcycle, supra*, 20 Cal.3d at pp. 582, 591, 598; Code Civ. Proc., § 875.) PacifiCare, however, bases its attorney fees claim on the theory it never faced any liability as a matter of law and any liability that existed fell *solely* on Bright. PacifiCare's sole liability theory is inconsistent with the joint liability theories section 1371.25's third sentence preserves. To preserve its attorney fees claim, PacifiCare would have to concede it and Bright are jointly liable for the Martin's damages. Of course, PacifiCare makes no such concession.

If PacifiCare shared joint liability because its own acts or omissions contributed to the delays in Elsie's health care, as the Martins alleged, PacifiCare's attorney fees claim still would fail. The authorities PacifiCare relies on for its right to recover attorney fees—the tort of another doctrine and Code of Civil Procedure section 1021.6—apply only when the party seeking the fees bears no fault. (See *Heckert v. MacDonald* (1989) 208 Cal.App.3d 832, 838 [256 Cal.Rptr. 369] [party succeeding on indemnity claim may recover attorney fees for defending underlying action if the party obtains *complete* indemnity]; *Watson v. Department of Transportation* (1998) 68 Cal.App.4th 885, 891 [80 Cal.Rptr.2d 594] [to recover attorney fees under Code Civ. Proc., § 1021.6 a party must be free from fault].) Consequently, if PacifiCare is jointly liable with Bright, PacifiCare has no claim for attorney fees under the tort of another doctrine or Code of Civil Procedure section 1021.6.

In short, PacifiCare fails to establish a viable attorney fees claim against Bright. If the Martins sued PacifiCare based on Bright's acts or omission only, then section 1371.25 bars PacifiCare's attorney fees claim. If the

Martins sued PacifiCare based on Bright's acts or omissions *and* PacifiCare's acts or omissions, then the authorities PacifiCare relies on for its attorney fees claim do not apply. Without a viable theory for its attorney fees claim, PacifiCare cannot show the trial court abused its discretion by failing to consider that claim when determining Bright and the Martins settled in good faith. The record establishes no abuse of discretion and we conclude the trial court properly granted Bright's good faith settlement motion.[7]

## III

### DISPOSITION

The order granting Bright's good faith settlement motion and dismissing PacifiCare's cross-complaint is affirmed. Bright's cross-appeal from the order denying its summary judgment motion is dismissed as moot. Bright shall recover its costs on appeal.

Fybel, J., and Ikola, J., concurred.

---

[7] Because we affirm the trial court's decision granting Bright's good faith settlement motion and dismissing PacifiCare's indemnity cross-complaint based on that determination, Bright's cross-appeal challenging the trial court's denial of Bright's summary judgment motion on the cross-complaint is moot. We dismiss the cross-appeal on that ground.