Filed 5/28/13  Rhodes v. Decker Bullock Realty CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **JESSE W. RHODES et al.,**<br><br>    **Plaintiffs and Appellants,**<br><br>v.<br><br>**DECKER BULLOCK REALTY, INC. et al.,**<br><br>    **Defendants and Respondents.** | **A136629**<br><br>**(Marin County<br>Super. Ct. No. CIV 094392)** |

      This appeal arises from an action involving a sale of real property.  The buyer of the property, Marion Hill, sued the sellers, appellants Jesse and Brenda Rhodes,[1] and the sellers' agents, respondents Decker Bullock Realty, Inc., William Bullock, and Lydia Sarkissian (collectively DBR), claiming the Rhodes and DBR had failed to make adequate disclosures in connection with the sale of the property.  Both Jesse and Brenda filed cross-complaints against DBR.

      DBR and Hill eventually agreed to settle Hill's claims for $150,000.  DBR then moved for a determination of good faith settlement under Code of Civil Procedure

---

[1]     We will refer to appellants collectively as "the Rhodes" but will use their first names when the context requires that they be identified individually.

1

section 877.6.[2]  The trial court granted the motion over the Rhodeses' opposition, and its order dismissed all pending cross-complaints against DBR.

The Rhodes now appeal from the order granting the motion.  They argue the trial court erroneously dismissed a contract cause of action in Jesse's cross-complaint.  They also contend the trial court made a number of errors in assessing DBR's potential liability, both to Hill and to them.  We find none of these arguments persuasive and affirm the challenged order.

FACTUAL AND PROCEDURAL BACKGROUND

The Rhodes purchased the property at issue (a house in San Rafael) in 1998.  DBR represented the seller in that transaction.  The Rhodes initially lived in the house but moved out in 2002 pending divorce proceedings.  In 2005, the Rhodes listed the property for sale, and DBR again served as the listing broker.  In August 2006, the Rhodes sold the property to Hill for $4.2 million.

In a complaint she filed below, Hill claimed that when she visited the property prior to the 2006 sale, DBR's agent told her that improvements located at the rear of the property were all part of the property.  Hill alleged the real estate disclosures provided by DBR and the Rhodes were inadequate because they failed to reveal a lot line adjustment on the property and an existing encroachment of the property into open space areas owned by the City of San Rafael (the City).  DBR was alleged to have become aware of these problems when it handled the 1998 sale to the Rhodes and to have made full disclosure of these issues to the Rhodes in connection with that sale.

The real estate transfer disclosure statement signed by Jesse and Hill for the August 2006 sale noted that the sellers were aware of the existence of "encroachments, easements or similar matters that may affect your interest in the subject property."  A handwritten explanation states, "The prior owner has installed deer fencing outside the lot line and into open space that is land locked and no[t] accessible to the public."

_____

[2]  Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2

Hill also alleged that in 2007, she had received a notice from the City informing her that in 2000, the City had requested that the Rhodes remove certain private improvements encroaching on the City's open space. In March 2010, the City filed suit against Hill, alleging causes of action for trespass and abatement of a public nuisance. That action was tried before Judge Roy Chernus in April 2012 and resulted in an order enjoining Hill to abate the encroachment and assessing a penalty of $30,000. In his statement of decision, Judge Chernus noted that Hill "was advised that there was an encroachment when she purchased the property (but, to be fair to her, she was not told the full extent of it)."

Hill later sued the Rhodes and DBR, and her third amended complaint, filed April 2012, alleged six causes of action. The first, second, and fifth involved only the Rhodes, and sought relief for breach of contract, violation of Civil Code section 1102, et seq., and rescission. The third and fourth causes of action pled claims against both the Rhodes and DBR (and individual agents of DBR) for fraud, deceit, and negligence. The sixth cause of action, for negligence, involved only DBR. Hill sought $4.2 million plus interest on her rescission claim and damages according to proof on the remaining claims.

Jesse and Brenda filed separate cross-complaints against DBR and Tiburon Land Company, which had represented Hill during the sale of the property. Jesse's cross-complaint pled causes of action for equitable implied indemnity, "total indemnity," implied contractual indemnity, contribution, declaratory relief, breach of contract, and breach of fiduciary duty. The last two claims were pled only against DBR and its agents. Brenda's cross-complaint alleged causes of action for equitable implied indemnity, tort of another, total indemnity, implied contractual indemnity, contribution, and declaratory relief.

On April 9, 2012, Hill settled with DBR and its agents for $150,000. Counsel for DBR then filed a motion pursuant to section 877.6 seeking a determination of good faith settlement, a motion which the Rhodes opposed. After hearing argument from counsel, on June 24, 2012, Judge Chernus granted the motion for determination of good faith

settlement. The order granting the motion dismissed "any pending cross-complaints" against DBR and its agents.

The Rhodes filed a notice of appeal on September 19, 2012.

DISCUSSION

The Rhodes raise a number of challenges to the trial court's determination of good faith settlement. They first contend Jesse's "separate and distinct" contract claim against DBR was erroneously dismissed, because section 877.6 does not apply to contract claims. They also argue the trial court's determination fails to account for DBR's degree of culpability and for DBR's potential liability to the nonsettling parties. Finally, they contend the settlement does not meet the test articulated by the California Supreme Court in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 (*Tech-Bilt*). After setting forth the governing law and our standard of review, we address these arguments in turn.

I.      *Governing Law and Standard of Review*

Section 877.6 provides in pertinent part, "(a)(1)  Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice in the manner provided in subdivision (b) of Section 1005. . . . [¶] [¶] (c)  A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.  [¶] (d)  The party asserting the lack of good faith shall have the burden of proof on that issue."

In *Tech-Bilt, supra,* 38 Cal.3d 488, at page 499, our state Supreme Court identified a number of factors a trial court should consider in making a good faith settlement determination, "including a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement

4

than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants."

We review the trial court's decision granting a motion for good faith settlement determination for abuse of discretion. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957 (*Cahill*).)

II.     *The Trial Court Did Not Err in Dismissing Jesse's Contract Claim Against DBR.*

The Rhodes argue that Jesse's breach of contract claim against DBR is not subject to section 877.6. They contend this case does not fall within the language of the statute because Jesse's sixth cause of action does not sound in tort, and Jesse and DBR are not co-obligors on a contract debt. We disagree.

The Rhodes cite no authority for their reading of the statute, and it appears contrary to available case law. It is true that the benefits of section 877.6 apply only to codefendants who are either joint tortfeasors or co-obligors on a single contract. (See *Tiffin Motorhomes, Inc. v. Superior Court* (2011) 202 Cal.App.4th 24, 29-30, 33 [§ 877.6 does not apply to claims against different manufacturers all sued for breach of separate warranties].) In this case, however, the requirements of the statute are met. DBR is a party to an action in which it and the Rhodes are alleged to be joint tortfeasors. (See § 877.6, subd. (a)(1).) That fact makes this case unlike those in which section 877.6 has been held inapplicable. (E.g., *Herrick Corp. v. Canadian Ins. Co.* (1994) 29 Cal.App.4th 753, 759-760 [§ 877.6 does not apply to protect settling insurer from contribution claims of co-insurer because obligations to insured arise out of separate contracts].)

Moreover, as Division Four of this appellate district explained in *Cal-Jones Properties v. Evans Pacific Corp.* (1989) 216 Cal.App.3d 324, at page 327, "[a]llowing a joint tortfeasor to bring an affirmative claim for damages that is actually an artfully pleaded claim for indemnity would contravene the purposes of the statute." Trial courts have discretion "to ferret out those claims that are in fact claims for indemnity." (*Id*. at p. 328.) In this case, Jesse's breach of contract claim is based on the same facts as his

5

claims for indemnification. DBR's handling of the disclosure to Hill is alleged to have failed to meet the applicable standard of care for real estate brokers. This is the gist of Jesse's breach of contract claim, which alleges DBR failed to exercise due diligence in selling the property; failed to act in good faith to effect the sale; and failed to exercise reasonable skill and care in the performance of their duties. Since all of Jesse's claims against DBR arise out of DBR's allegedly improper handling of the sale to Hill, the trial court could properly conclude that his breach of contract cause of action was an artfully pleaded claim for indemnity. (See *Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1277-1279 [where all claims involved alleged mismanagement of trusts, and joint tortfeasors caused same injury to plaintiff, settlement barred all claims against settling tortfeasor, including those for breach of attorney-client retainer agreement]; *Norco Delivery Service, Inc. v. Owens-Corning Fiberglas, Inc.* (1998) 64 Cal.App.4th 955, 963-964 ["direct" or "independent" causes of action against settling tortfeasor held to be claims for indemnity or contribution].)

We therefore conclude the trial court did not err in dismissing Jesse's contract claim against DBR.

II. *The Trial Court Did Not Abuse its Discretion in Applying the Tech-Bilt Factors to the Settlement Between DBR and Hill.*

The Rhodes next contend the trial court made two errors in applying the *Tech-Bilt* factors to the settlement at issue. They first argue that the trial court failed to properly weigh DBR's "proportional share of comparative liability for the plaintiff's injuries." (*Tech-Bilt, supra,* 38 Cal.3d at p. 499.) They then appear to argue that in making its good faith settlement determination, the trial court considered only DBR's potential liability to Hill and did not consider DBR's potential liability to them.[3] We find no merit in either contention.

---

[3] The Rhodes' opening brief is not entirely clear on these points, in part because their arguments are not summarized in the headings under which they appear. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [briefs must "[s]tate each point under a separate heading or subheading summarizing the point"].) For example, the first of these arguments is preceded by the heading, "The Degree of Culpability of the Settling Party is

6

As to the issue of DBR's proportional share of comparative liability to Hill, the Rhodes make a cursory, one-paragraph argument that they are not more culpable than DBR. This argument is based solely on the claim that a DBR agent was the only person who incorrectly represented to Hill that the rear property line was located at the deer fence.[4] But as the Rhodeses' opening brief acknowledges, Hill also claimed to have been damaged by Jesse's "misleading 'disclosures,' which did not call out any encroachment issues or notice of any abatement actions[.]" Her complaint alleged that Jesse checked the boxes on the real estate disclosure statements "that affirmatively represented . . . [that] there were no common property features, encroachments, boundary disputes, or notices of abatement or citations against the Property that would affect its value and/or desirability." In light of these facts, the Rhodes have not persuaded us that the trial court abused its discretion in weighing DBR's proportional share of comparative liability to the plaintiff.

The Rhodes also contend the trial court failed in its obligation to address DBR's failures as brokers and agents in causing or contributing not only to Hill's damages, but also to their damages. This contention seems untenable on the record before us. In the court below, the Rhodes raised this argument both orally and in their opposition to DBR's motion.[5] In reviewing the trial court's decision, this court presumes the trial court performed its duty and followed applicable law. (*Cahill, supra,* 194 Cal.App.4th at p. 956.) Because the Rhodes specifically asked the trial court to consider DBR's

a Key Factor in the 'Good Faith' Analysis." Such general headings do not identify the claimed error in the trial court's ruling and do not assist us in understanding the Rhodeses' contentions. (See *Loranger v. Jones* (2010) 184 Cal.App.4th 847, 858, fn. 9 (Cantil-Sakauye, J.) [general argument headings like "Statutory Analysis" and "Case Analysis" do not satisfy requirements of Cal. Rules of Court, rule 8.204(a)(1)(B) for separate headings summarizing argument].)

[4]     We note that the agent in question denied having made any such representation to Hill.

[5]     Indeed, the argument made in the Rhodeses' opening brief is lifted almost verbatim from the memorandum of points and authorities they filed below in opposition to DBR's motion for good faith settlement determination.

potential liability to them in making its determination, we may presume the court did so. They point to nothing in the record that demonstrates otherwise. (*Id.* at p. 965 ["there is nothing in the record showing the trial court did not consider" settling defendant's potential liability to nonsettling tortfeasor].)

III. *The Settlement Figure Is Not Grossly Disproportionate to a Reasonable Estimate of DBR's Potential Liability.*

The Rhodes argue the trial court abused its discretion because the settlement amount does not fairly represent DBR's potential liability. They begin this argument by listing what they assert are the "quantifiable components" of Hill's damages. These include the claimed value difference in the property ($423,000), attorney fees incurred in both Hill's action against them and in the City's action against Hill (total $650,000), and the total amount of the City's penalty claim against Hill ($406,000). To this they add $190,000 in attorney fees they themselves have incurred, bringing the total potential damages to $1,669,000.

The Rhodes argue that the good faith analysis must start with this estimated amount of damages. To the contrary, "'[a] plaintiff's claims for damages are not determinative in finding [a settlement was made in] good faith. [Citation.] Rather, the court is called upon to make a "rough approximation" of what the plaintiff would actually recover.' [Citation.]" (*Cahill, supra,* 194 Cal.App.4th at p. 964.) Here, the trial court could conclude, based on the information available to it and its own judicial experience, that Hill was likely to recover far less than her claimed damages. (*Id.* at pp. 964-965.)

For example, the Rhodes claim that the attorney fees incurred in Hill's action against Rhodes and in the City's action against Hill should be included as part of the potential damages. Nevertheless, they do not articulate a legal theory on which those fees could be recovered. Nor do they explain the basis for claiming the $190,000 in attorney fees they have incurred in this action. Even if one assumes the trial court failed to consider the element of attorney fees in its good faith determination, the Rhodes have not shown the court abused its discretion. "Without a viable theory for [their] attorney fees claim, [appellants] cannot show the trial court abused its discretion by failing to consider

8

that claim when determining [that DBR and Hill] settled in good faith." (*PacifiCare of California v. Bright Medical Associates, Inc.* (2011) 198 Cal.App.4th 1451, 1469.)

As to the remaining elements of damages, the trial court could also rationally conclude that Hill's own negligence in failing to investigate more fully the encroachment disclosed to her would reduce or eliminate her potential recovery at trial. (*Cahill, supra,* 194 Cal.App.4th at pp. 962-965 [given evidence of plaintiff's contributory negligence, trial court could conclude possibility of recovery against settling defendant was remote].) Indeed, in the City's action against Hill, Judge Chernus had already decided that prior to the sale, Hill was made aware of the encroachment that formed the basis of her complaint against the Rhodes and DBR. We need not decide whether this finding would have had issue preclusive effect against Hill in her suit against Rhodes and DBR. For even if it would not, the trial court could have concluded that Hill had a duty of inquiry once placed on notice of these facts, a duty she arguably failed to discharge.[6] (See *Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 644.) On these facts, the trial court might well have concluded that Hill's negligence would reduce or eliminate her potential recovery at trial. (See *Cahill, supra,* 194 Cal.App.4th at pp. 964-965.)

The Rhodes make much of the potential damages on Hill's rescission cause of action, but the trial court could reasonably have concluded that Hill was unlikely to obtain relief based on rescission. Hill's complaint alleged that the representations made to her were false and fraudulent, but she reasonably relied on them and believed them to be true. But none of the evidentiary materials attached to the Rhodeses' opposition suggests that DBR was anything other than negligent in failing to make a fuller disclosure. And if the court found that Hill had neglected her own duty to make a diligent investigation of the disclosed encroachment, then rescission would not be

---

[6]     Attached to the Rhodeses' opposition in the court below was a portion of Hill's responses to DBR's interrogatories. In one of her responses, Hill acknowledged she had performed only a "quick review" of public documents concerning the lot line adjustment. She stated that the City had provided her with "20 inches or so of documents . . . that she fanned through in 45 minutes in August, 2006."

available as a remedy even if her complaint could be construed as seeking rescission based on mistake rather than on fraud. (Civ. Code, § 1577; see *Mercury Insurance Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1074 [equitable remedy of reformation unavailable for mistake of fact caused by neglect of legal duty].)

The remaining element of Hill's potential recovery is the difference in the value of the property after subtracting the encroachment from the lot size, which is estimated at $423,000. The settlement figure of $150,000 represents more than one-third of the total value difference. Since courts recognize "that a settlor should pay less in settlement than he would if he were found liable after a trial," the amount certainly does not appear to be "so far 'out of the ballpark' . . . as to be inconsistent with the equitable objectives of the statute." (*Tech-Bilt, supra,* 38 Cal.3d at pp. 499-500.)

Accordingly, we conclude the trial court did not abuse its discretion in finding that the settlement was made in good faith.

DISPOSITION

The order from which the appeal is taken is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

Jones, P.J.

_____

Needham, J.

_____

Bruiniers, J.